# Carroll *against* Nixon.

Eight days after the execution of an administration bond by A as security for B the administrator, C wrote to A that at the request of B he promised and agreed to indemnify A against all loss or injury he might sustain in consequence of having become security for B in that business. *Held* that the consideration was a continuing one, and sufficient to sustain an action of *assumpsit* by A against C for indemnity against a loss that afterwards happened to him by reason of the default of B the administrator.

Whether in such case the promise was not made in consequence of a precedent request, ought to be submitted to the jury to judge from the circumstances given in evidence, as such precedent request may necessarily arise out of those circumstances without being expressly proved.

ERROR to the District Court for the city and county of *Philadelphia*.

This was an action of *assumpsit* brought by Henry Carroll and William Sterret, executors of Samuel Sterret, deceased, against the executors of Henry Nixon, deceased. The first count of the narr. alleged that on the 4th of March 1818, Thomas Morris procured Samuel Sterret, deceased, and Robert Johnson to become

[Carroll v. Nixon.]

his sureties to the State of Maryland, for the faithful performance of the duties of Morris, as administrator of Archibald Kane, deceased; and before the execution of the bond, promised Sterret to procure for him counter security from Nixon against any injury that might accrue to Sterret by reason of his becoming surety as aforesaid. That Morris, Sterret and Johnson afterwards, on the day aforesaid, (4th of March 1818), by their writing obligatory duly sealed, acknowledged themselves bound to the State of Maryland in the full and just sum of $20,000, in the whole and for the whole, jointly and severally. That the condition of that obligation was, that if Morris should well and truly perform the office of administrator aforesaid, according to law, and in all respects discharge the duties required of him by law as such administrator, without any injury or damage to any person interested in the faithful performance of the said office, then the obligation was to be void. That Nixon, in consideration thereof, and that Sterret had sealed the bond, trusting to the promise of Morris to procure him the guaranty of Nixon; afterwards, on the 18th of March 1818, at Philadelphia, in the lifetime of Nixon, promised and undertook, and then and there promised Sterret that he would indemnify him against all loss and injury which he might sustain in consequence of his having become surety as aforesaid. That Sterret, confiding in the said promise of Nixon, had ever since continued to be the surety of Morris, without attempting to procure other security, according to the promise of Morris, or otherwise as he might have done, protect himself from his said liability.

The plaintiffs then averred that Morris did not faithfully perform his duties as administrator as aforesaid, but that the bond to the State of Maryland became forfeited, and that the State of Maryland recovered judgment upon the bond, after the death of Sterret, against the plaintiffs, his executors, on the 12th of May 1837, to be levied of the goods and chattels which were of Sterret, for $20,000, and $37.17 costs, to be released on payment of $8918.65, with interest from the 12th of May 1837. That the plaintiffs paid that sum to the State of Maryland, with costs of suit; whereupon Nixon became liable to pay them the said sum with interest from the 12th of May 1837, &c. Then followed the usual breach.

The second count stated the execution of the bond as before, (alleging no previous promise by Morris to procure the guaranty of Nixon), and then proceeded to state that by the provisions of the Act of Maryland then in force, it was provided that if any security of an executor or administrator should conceive himself to be in danger from the suretyship, he might apply to the Orphans' Court which granted the administration, and that the said court might call on the said party to give counter security, to be approved by the court; and if the party so called should not give, within a fixed and reasonable time, such counter security, the

court might order the property remaining in the hands of such executor or administrator, to be delivered up to such security; and that Nixon, in consideration of the premises, and that Sterret, at the special instance and request of Nixon, would forbear to proceed under the said law, and to call on Morris to give counter security, in the manner and under the penalty therein provided, thereupon, to wit, on the 18th of March 1818, undertook, &c., (as in the former count). That Sterret, confiding in said promise, did forbear to call on Morris for counter security, of which Nixon had notice, &c.

The third count stated the bond as before in the second count, and then set out the consideration thus: In consideration of the premises, and that Sterret had become surety as aforesaid, and would, at the special instance and request of Nixon, forbear to call upon and demand of Morris counter security, according to the provisions of the Act of Maryland, &c., Nixon, on the 18th of March 1818, undertook, &c., (as before); and averred that Sterret confiding, did forbear, &c.

The 4th count stated the bond as in the last, and that in consideration thereof, and that Sterret had become joined in said bond at the special instance and request of Nixon thereupon, on March 18th, 1818, he undertook, &c.

The defendant pleaded *non assumpsit* and the Statute of Limitations.

The bond to the State of Maryland, and its execution by all the parties, was duly proved, and its forfeiture by Morris, suit against Sterret, judgment for sum named in narr., and the payment of it as therein alleged by the plaintiffs as executors of Sterret. The bond was in the following words:

ARCHIBALD KANE's  
*Administration Bond.* } *Maryland, Sc.*

Know all men by these presents, that we, Thomas Morris, Samuel Sterret, and Robert Johnson, all of Baltimore county, are held and firmly bound unto the State of Maryland in the full and just sum of $20,000, to be paid to the said State of Maryland, to which payment well and truly to be made and done, we bind ourselves, our and every of our heirs, executors and administrators, in the whole and for the whole, jointly and severally, firmly by these presents, sealed with our seals, dated this 4th day of March, in the year 1818.

The condition of the above obligation is such, that if the above named Thomas Morris shall well and truly perform the office of administrator with the will annexed of Archibald Kane, deceased, according to law, and shall in all respects discharge the duties of him required by law, as administrator with the will annexed aforesaid, without any injury or damage to any person interested in the faithful performance of the said office, then the above obli-

[Carroll v. Nixon.]

gation shall be void; it is otherwise to be in full force and virtue in law.

THOMAS MORRIS,          [SEAL.]
S. STERRET,              [SEAL.]
ROBERT N. JOHNSON,   [SEAL.]

Signed, sealed, &c.

The plaintiffs gave in evidence the following correspondence:

*Philadelphia, 12th March,* 1818.

Dear Sir,—Mr Thomas Morris having informed me of his having taken out letters of administration on the estate of Archibald Kane, deceased, and that you have become one of his sureties to the Orphans' Court of the State of Maryland, for the faithful performance of his trust, I do at the request of Mr Morris hereby promise and agree to indemnify you against all loss or injury you may sustain in consequence of your having become security for him in this business.

HENRY NIXON.

SAMUEL STERRET, Esq.

*Baltimore, February* 19, 1829.

HENRY NIXON, Esq., *Philadelphia.*

Sir,—Our friend, Mr Thomas Morris, who took out letters of administration on the estate of Archibald Kane from the Orphans' Court of this place, has been called upon to account for his administration at the suit of one of the creditors of the estate. As one of his sureties, I have been called on, as Mr M. did not reside in the State. I advised him of these proceedings, and urged his compliance with the summons of the court. In answer he wrote that he would appear at the appointed time. He did not. Another day, at my solicitation, was named by the court. In reply to my notification of the second arrangement, he writes under date, February 14, 'I was fully convinced when I wrote you last, that I should have been enabled to make an arrangement here which would have provided me with the means of settling the business in Baltimore, and cancelling your suretyship for me. It is with the utmost pain that I have now to inform you that I have altogether failed in the success which I had promised myself. I am so situated that it is impossible for me to leave the city.' This most mortifying and unexpected intelligence has exposed me to a suit and a certain judgment for a large amount. I know not exactly how much, as Mr Morris never communicated with me on the subject. Under these circumstances I look to you for redress and indemnity in virtue of your letter of the 12th March 1818, in which you promise and agree to indemnify me against all loss and injury I may sustain in consequence of having become security for Mr Morris.

I give you the earliest notice in my power of the awkward pre-

[Carroll v. Nixon.]

dicament in which we are placed, that you may take the necessary steps to secure yourself, which, considering the relation between you and Mr Morris, I hope will not be a difficult task. This occurrence makes me very miserable, and I pray you to relieve my feelings as soon as you possibly can.

Yours, &c.　　SAMUEL STERRET.

*Philadelphia, February* 24, 1829.

Dear Sir,—Your letter of the 19th inst. has given me surprise and pain, for the matter to which you refer has passed from my thoughts. Do me the favour to send me a copy of my letter of 10th March 1818, of which I have none, and write me also whether Mr Morris has taken any steps since the administration, such as filing an inventory, settling an account, or anything of this nature. Write me also what steps are necessary for him to take to show the amount of the assets for which he is accountable, and please state the amount for which you gave bond, and the date. It comes upon me without any preparation for the event, and my first duty of course is to ascertain my actual position.

With great respect, I remain,　　HENRY NIXON.

*Philada.* 24*th*, 1829.

*Philadelphia, March* 3*d*, 1829.

Dear Sir,—Your favour of the 28th February is received, and in reply I have to request that without delay you will obtain for me a copy of the bond given by Mr Morris and yourself, as it is absolutely necessary that I should have it. I hope you will grant my request, and prevent my applying to some other person to obtain it for me, which I should regret.

Very respectfully,　　HENRY NIXON.

Dear Sir,—Your favour, enclosing the opinion of Mr Heath, was duly received, and immediately forwarded to Mr Morris. By this day's mail I received the annexed reply, and flatter myself that Mr Morris will, without fail, forward on to you his account, and which I trust will be satisfactory.

With great regard, I remain,

HENRY NIXON.

S. STERRET, Esq.　　*Philada. May* 27, 1829.

(Copy.)　　*New York, May* 26, 1829.

Dear Nixon,—I yesterday received your letter, with its enclosures. I had long since ascertained from the insurance office the amount of payments made to them by me for John Kane, whose notes I had endorsed, but which notes were given for premiums of insurance for his brother Archibald. The amount of payments thus made by me is $5502.83. Of this I have made oath before a Judge of the United States, and would have forwarded long since, had I been able to procure from a Mr Douglass an account of the

IV. — 66　　2 T *

[Carroll v. Nixon.]

last payments made by him to me as administrator. I had at an early period received from him, after deducting expenses, $6724.87. This amount I know from my own memorandums to be correct. I received at a later period upwards of $2000 more. Mr Douglass was out of town when I first wrote to him to furnish me with the precise amount of the last payment. He has repeatedly since his return promised to furnish me with it. I will again attempt to get it from him, but if I cannot, I will send my account on without it. My receipts will show the exact amount.

Yours affectionately,            THOMAS MORRIS.

(Copy.)

HENRY NIXON, Esq.

Dear Sir:—The suit against me as Thomas Morris's security, for which you engaged to hold me harmless and indemnified, must very soon come to a termination. The trial was urged with great zeal by the plaintiff, but the ingenuity of Mr Heath, the counsel employed by Mr Morris, has obtained a little longer delay. The result does not admit of a doubt. Whilst the matter is still depending, and before judgment, it has been suggested to me a favourable compromise might be made. As Mr M. seems to have abandoned all care of the business, I give you the hint as I received it. I cannot act in the business without your authority, but whatever you advise and direct shall be attended to with a scrupulous regard to your interest; or perhaps it would be most desirable to delegate Mr Heath to make the compromise when he sees the most favourable opportunity. It is high time the matter was finally settled, and however unpleasant, the crisis must be met. Let me know your pleasure as soon as convenient.

Yours, &c.            S. S.

S. STERRET, Esq.—I beg leave to acknowledge the receipt of your favour of yesterday. I shall write you again on the subject in a few days. With great respect, I remain,

HENRY NIXON.

*Philadelphia, April 29th* 1833.

S. STERRET, Esq.

Dear Sir:—Will Mr Heath and yourself be at home the latter part of this week or the beginning of the next? A friend of mine will be in Baltimore for a day or two, at that time, and will call to procure all the information necessary.

With great respect, I remain your obedient servant,

HENRY NIXON.

*Philadelphia, May 4th* 1833.

Dear Sir:—Your favour of the 1st was received in due course of mail. My friend, Mr Williams, will leave this on Tuesday or

[Carroll v. Nixon.]

Wednesday morning, by steamboat line, and will call on you the afternoon of his arrival.   Very respectfully, I remain,

                                          HENRY NIXON.


                                *Philadelphia, May 7th,* 1833.
   S. STERRET, Esq.—This will be handed you by my friend, Mr Williams, who will confer with you respecting your several communications.   With great respect, I remain,

                                          HENRY NIXON.


   The plaintiffs also gave in evidence the following Act of the State of Maryland : " If any security of an executor or administrator shall conceive him or herself in danger of suffering from the suretyship, he may apply to the Orphans' Court which granted the administration, and the said court may call upon the party to give counter security, to be approved of by the court.   And if the party so called on, shall not, within a fixed reasonable time, give such counter security, the court may order the property remaining in the hands of such executor or administrator to be delivered up to such security."
   The defendant moved for a nonsuit, on the following grounds, which was ordered by the court :
   1. Because the plaintiffs offered no consideration for the alleged promise on which this action was brought.
   2. Because the alleged consideration was a past consideration.
   3. Because the alleged consideration was a bad consideration, and insufficient in law to support the alleged contract.
   4. Because the contract alleged being a Maryland contract, and the Statute of Frauds being in full force in that State, the *lex loci contractus* precluded the plaintiffs from proving any consideration not contained in the written memorandum produced.
   5. Because by the *lex loci contractus,* the alleged promise was void.
   6. Because by the *lex loci contractus,* the consideration mentioned in the paper alleged to contain the promise was bad, and insufficient to support any contract.
   7. Because the evidence produced was insufficient to make out the case stated in the narr.
   Errors assigned :
   The court erred in entering judgment of nonsuit, because—
   1. There is a good *continuing* consideration stated in the written contract.
   2. The bond executed by the plaintiff, as surety for Morris, being referred to in the agreement of guaranty by Nixon, is to be taken with the guaranty, and a sufficient consideration can be gathered from them.
   3. The contract is to be governed by the laws of Pennsylvania, where it was made, and the evidence extrinsic of

the written agreement, shows a sufficient consideration for the contract.

4. The contract was not within the provisions of the Statute of Frauds, in force in Maryland, and the extrinsic facts in evidence show a sufficient consideration.

5. It was in evidence, that by the laws of Maryland, Sterret, after signing the bond, and at the time Nixon signed the agreement of guaranty, could have called on Morris to furnish counter security, for his protection, or compelled him to resign the assets into Sterret's hands, and that Sterret forbore that remedy in consideration of Nixon's contract to indemnify him, and ever since has forborne, trusting to Nixon's promise.

*M'Ilvaine*, for the plaintiff in error.

1. There was a continuing consideration which was sufficient to support the promise, as where in consideration that the defendant had become and was tenant to the plaintiff of certain land, and undertook during the tenancy to repair. 1 *Chitt. Plead.* 298; 4 *East.* 154. In *Pearl* v. *Unger* (*Cro. Eliz.* 94), in *assumpsit*, the plaintiff declared he was possessed of certain land, and the defendant, in consideration that he had occupied the land and had paid the rent to the defendant all the time he had occupied it, assumed to save him harmless for the occupation of the land always during the term: it was adjudged that the consideration that the plaintiff was in possession and had paid his rent, and was to pay his rent, was sufficient to cause the other to defend his possession for the time past and to come. So in *Powley* v. *Walker* (5 *T. Rep.* 873), the mere relation of landlord and tenant was held a sufficient consideration for the tenant's promise to manage the farm in a husbandlike manner. So where the consideration of the defendant's marriage was the plaintiff's having married his daughter. Here the consideration for the defendant's promise was the plaintiff's continuing to remain surety for Morris, and not proceeding to require new bail under the laws of Maryland: and that is necessarily implied from the nature and terms of the defendant's undertaking.

2. There was some evidence to go to the jury to show that Nixon's promise was the consideration on which the defendant entered into the bond. They were brothers-in-law, and the correspondence shows they were intimate friends. Nixon, not living in Baltimore, could not become surety in the bond, and it is a fair inference, from the circumstances, that he told Morris to get some one to become surety, and he would indemnify him. The letter was nearly contemporaneous with the bond, considering the then state of the mails, and it ought all to be considered one transaction. In several cases it has been held fair to infer that the guaranty was given in connection with the transaction it related to. 8 *J. B. Moore* 2; 11 *Johns.* 221; 10 *Wend.* 207; 1 *Bing.* 216; 8

[Carroll v. Nixon.]

*Johns.* 28; 10 *Wend.* 218; 6 *Bing.* 201; 8 *Dowl. & Ry.* 62; 3 *Watts* 214; 3 *Burr.* 1663; 10 *Mass.* 222.

If the plaintiff being in danger applied to the defendant and threatened to proceed under the Maryland Act, and then the defendant gave the security, it would be a sufficient consideration. There would be forbearance.

*Williams, contra.* There being no parol evidence, the case must turn on the bond and letter, and their construction is for the court. A past consideration is bad, and this is clearly so. It is for having before that time become security. All was past and done, and therefore the promise was *nudum pactum.* It is not like the cases of forbearance, for there the party was to wait, and here there was no such agreement. And as to a continuing consideration, that can only be where the relation exists which produces a continuing obligation, such as that of landlord and tenant, father and son-in-law, none of which apply to a surety or guarantor. There was nothing to prevent the plaintiff from applying to the court in Maryland and requiring new security. There was therefore no contract to forbear.

The opinion of the Court was delivered by

KENNEDY, J.—This action, being *assumpsit,* is founded upon a promise of indemnity, and the only question raised in it is, was the consideration sufficient in law to render the promise binding. The court below considered the consideration as past; and as Nixon, the party who made the promise of indemnity, derived no benefit whatever from it, this promise was therefore to be regarded as a *nudum pactum,* upon which no action could be maintained for a breach of it. We, however, think the court were mistaken in the view which they took of the matter: for instead of the consideration being a past consideration, it appears to us to have been more properly a continuing one. It was only eight days after the execution of the bond by Sterret as the surety of Morris, that Nixon gave his promise of indemnity to Sterret for having done so. At the time of making this promise, it is most likely that no act whatever had been done by Morris in administering the estate of Kane, to which the condition of the bond had reference. But, at all events, little if anything could have been done, for it was a work or trust that could only be accomplished or administered in the progress and after the lapse of considerable time. Generally one year, at least, is allowed for such purpose, so that as long as the estate, mentioned in the condition of the bond, remained to be administered, Sterret, the surety, was liable to be damnified by the misconduct or neglect of Morris, the principal, in attending to and performing the same. This liability of the surety to be injured in future, was a continuing liability, and, to prevent his sustaining a loss thereby, may be fairly said to be the consideration for mak-

[Carroll v. Nixon.]

ing the promise of indemnity by Nixon. If so, the consideration was a continuing consideration. Suppose, for instance, that Morris himself, on the 12th of May after the execution of the bond, had made a promise of indemnity to Sterret, his surety, similar to that which Nixon made on that day at Morris's instance, would not the consideration have been considered as continuing and the promise binding? No doubt will be entertained but it would, just as clearly as in the case of a promise made by a tenant, after the commencement of his lease and during its continuance, to repair, &c. See 1 *Chitty's Civil Pl.* 298, and the authorities there referred to. Then if Morris himself would have been bound by his promise of indemnity, upon the ground that the consideration was continuing, it is difficult to perceive any good reason why a third person should not be bound who undertakes to do it for him. It may be said that Morris had an interest in administering the estate and might be a gainer by it, but that Nixon, the third person in this case, could not in any way be a gainer by it, and therefore Morris might be considered as bound by such promise when Nixon ought not. But although profit or gain by the party promising may be a sufficient consideration to support his promise, yet it is equally well settled that a detriment to the party to whom the promise is made is equally good. *Jones* v. *Ashburnham* (4 *East* 463). If the promise, in this case, had been made by Nixon to Sterret previously to the latter's becoming surety, for the purpose of inducing him to do so, it is admitted that it would have been binding. But although it was not made previously with such view, yet it was evidently made for the purpose of inducing him to be contented, to rest easy, and remain surety, when by the law of Maryland he might have relieved himself from all detriment on account of such suretyship, at least in time to come, as soon as he conceived that he was in danger of suffering from it, by obtaining an order of the court to have the property delivered over to himself, unless Morris gave counter security. Thus Sterret was induced to remain surety for Morris at the special instance and request of Nixon, whereby he received great detriment; and why Nixon should not indemnify him in the latter case as much as in the former, is not easily answered. For it can scarcely be questioned, that the injury done by Morris to Sterret as his surety was all effected after the promise of indemnity given by Nixon.

But there is another view, under which it appears to me, that this case might and ought to have been left by the court to the jury, if the plaintiff had not been entitled otherwise to recover, to say from the circumstances given in evidence, whether the promise of indemnity made by Nixon was not given in pursuance of a promise or assurance made by Morris to Sterret previously to the latter's becoming his bail, that he would procure the promise of Nixon to keep him indemnified; and, if so, that the promise of Nixon was good and binding. For unless such assurance was

[Carroll v. Nixon.]

given by Morris to Sterret, to induce him to become his bail, why should Morris, in the course of only eight days afterwards, almost as soon as it was practicable, have procured Nixon to give his promise of indemnity? It would have been idle and unnecessary in Morris to obtain from Nixon such promise of indemnity, unless he was bound to do so, in order to fulfil his previous promise to Sterret. Indeed it seems almost impossible to account rationally for his obtaining it upon any other ground, It is like the case of a precedent request, which is seldom proved, for in most cases, it necessarily arises out of the circumstances of the transaction. *Per Serg't. Williams*, 1 *Saund.* 265, *Note* (1).

Judgment reversed and a *venire de novo* awarded.