# Leber *against* Kauffelt.

The condition of a bond of indemnity "to save harmless and indemnify against all claims of A," is broken whenever the claim is made and the obligee is under the necessity of paying it, which he may do without waiting for an action to be brought against him.

On a bond of indemnity to A, without naming his executor or administrator, if he die before any breach of the condition, the administrator may maintain an action for a breach happening after his death.

If one entitled to letters of administration pay a claim against an intestate's estate, and afterwards take out letters, he may maintain an action on a bond given to the intestate to indemnify him against the claim thus paid: for the benefit of the estate and to support the right, the law makes the letters relate back to the death of the intestate, making the intervening acts done by the administrator valid and binding.

ERROR to the Common Pleas of *York* county. Jacob Leber, administrator of Nicholas Leber, against John Kauffelt and Jacob Kauffelt. This was an action of debt, upon the following bond of indemnity.

[Leber v. Kauffelt.]

" Know all men by these presents, that we, John Kauffelt and Jacob Kauffelt, are held and firmly bound unto Nicholas Leber in the sum of $1000, in lawful money of the United States, to be paid to the said Nicholas Leber, or to his certain attorney, heirs, executors, administrators, well and truly to be made and done. We bind ourselves and each of our heirs, executors, administrators, sealed with our seals and dated the 24th day of February 1831. Whereas, the said Jacob Kauffelt, administrator of the estate of Michael Kauffelt, did sell the remaining part of the real estate, being a tract of land of 120 acres and 142 perches and allowance, of which a part thereof is situate, lying and being within the manor of Springetsbury, and patented by Thomas Cadwallader, as by deed, bearing date the 18th day of December 1829, to the said Michael Kauffelt, &c.

Now the condition of the above obligation is such, that the above bounded John Kauffelt and Jacob Kauffelt, shall and will from time to time, and at all times hereafter, save, keep harmless and indemnify the said Nicholas Leber of and from all claims which the proprietor, Thomas Cadwallader, or any other person in his right may have challenge claim and demand of and from the said tract aforesaid, granted and sold to said Nicholas Leber, his heirs and assigns; then this obligation to be void and of none effect, or else to be and remain in full force and virtue."

After the plaintiff had given evidence of the sale of the land by John Kauffelt to Nicholas· Leber as mentioned in the bond of indemnity, he proved that Nicholas Leber in his lifetime had sold the land to Z. Hengst, and took his bonds for the purchase money : these bonds were assigned by Leber to Jacob Hoover, and he guaranteed the payment of them. After the death of Leber, Thomas Cadwallader made a claim upon Hengst, the owner of the land, and Jacob Leber, for the amount of the patenting money. Hoover having brought suit upon the bond against Hengst, he set up the outstanding title in Cadwallader as a defence, and the cause being referred to arbitration, there was an award for the defendant. Nicholas Leber being then dead, his son Jacob Leber, the plaintiff in this action, paid to Charles A. Barnitz, the agent of Thomas Cadwallader, the sum of $476, whereupon Cadwallader conveyed a good title to Hengst, who then paid his bond to Hoover, of all of which John Kauffelt had notice. After this, Jacob Leber took letters of administration upon the estate of his father, Nicholas Leber, and brought this action upon the bond of indemnity.

The court below were of opinion that the plaintiff was not entitled to recover ; because there was no breach of the obligation in the lifetime of Nicholas Leber ; because the payment to Cadwallader was a voluntary one, no action having been brought for its recovery ; and because it was paid by Jacob Leber before he took out letters of administration ; and they directed a verdict for the defendants.

v. — 56

*Fisher* and *Hambly*, for plaintiffs in error, argued that the acts done for the benefit of the estate were covered by relation back of the letters of administration.    2 *Vent.* 179; 1 *Keble* 285; *Style* 337; 1 *Roll. Ab.* 923; *Andrews* 333; 12 *Mod.* 7; 8 *Johns.* 126.    That the covenant was broken whenever a claim was made by Cadwallader, and that it was not necessary to wait to be sued.    4 *Mass.* 629; 7 *Johns.* 358; 2 *Chan. Cas.* 146; *Co. Lit.* 100; 3 *Rand.* 397; 1 *Dana* 303, 312; 4 *Call* 402; 11 *Serg. & Rawle* 115.    Equity would extend the right of action to the personal representative. 8 *East* 593; 22 *Eng. Com. L.* 342; 10 *Serg. & Rawle* 137; 4 *Dal.* 436.

*Mayer*, contra, contended that the bond was tantamount to a covenant for quiet enjoyment, and that no action would lie upon it until eviction.    8 *Johns.* 198; 3 *Watts & Serg.* 407; 3 *Penn. Rep.* 452; 2 *Saund.* 181.    The condition of the bond extended only to Nicholas Leber, and therefore covered only a breach in his lifetime.    9 *Watts* 179.    The assignee of the land is the only person who can sue.    5 *Cow.* 127; 4 *Kent's Com.* 459.

The opinion of the Court was delivered by

Sergeant, J.—The condition of this bond of indemnity being to save harmless and indemnify against claims by Thomas Cadwallader, or any person in his right, it was broken whenever such a claim was brought forward, and the obligee was under the necessity of paying it.    That event occurred in the latter part of the year 1838, when Cadwallader's agent notified the plaintiff, through Hengst, to come forward and patent the land, (that is, take a deed for it from Cadwallader, paying the claim against it), or he would sell it to some other person.    In consequence of this notice, the plaintiff paid $476, and the deed was made to Hengst, his vendee, by Cadwallader's agent.    The plaintiff's intestate having guaranteed to Hoover the bond which Hengst had given him, was thereby placed in a position in which he was obliged to refund to Hoover the amount of the bond, or pay Cadwallader, either of which involved him in the loss of the money against which the bond on which this suit is brought was given by the plaintiff as an indemnification, when Jacob Kauffelt sold the land for a full price, leaving the encumbrance outstanding against it.    The event contemplated by the parties when this bond of indemnity was given, has therefore happened, and in justice and equity the defendants are liable within the meaning and design of their contract; otherwise Jacob Kauffelt would withhold so much of the purchase money paid to him for the land by Nicholas Leber, and Leber's estate would lose it.    No eviction was necessary to render the defendants liable.    It is not a covenant of warranty, in which it is necessary for the plaintiff to show an eviction by a paramount title or encumbrance, before he can treat the covenant as broken.    It

is a personal covenant of the defendants for a special indemnity, which is broken whenever the obligee is put to loss or damage by reason of a breach; and that was the case when a claim was brought forward, and he was threatened with a suit or sale of the land, and he was under the necessity, in order to save himself, to come forward and pay it off. No authority says the plaintiff is bound to wait till an ejectment or other suit is brought by the original vendor. That was not looked to, but the payment of the demand. If such demand existed, was valid against the land, and could be enforced by legal process, and a suit was threatened, to wait for an actual suit would only lead to needless expense and delay. The obligee may, in such case, call on the obligor to come forward and pay off the encumbrance, as it his duty to do, or, in neglect thereof, pay it off himself, and resort to his bond of indemnity. The condition of the bond is to indemnify against all claims challenged or demanded by Cadwallader; and the notification by Mr Barnitz, his agent, certainly amounted to a challenge and demand of the claim within the meaning and spirit of the condition; and it is a sufficient breach if such claim was a lawful one, capable of being enforced, and put the plaintiff in jeopardy; and the defendant making default, it could only be removed by the plaintiff's payment of it. In 8 *East.* 593, there was a bond to indemnify bail, and save them harmless against all sums of money, costs and expenses, &c., and it was held they were indemnified by paying the money into court after notice to the debtor, and no fund provided by him ; for one who engages to indemnify and save others harmless against a certain engagement, is bound to secure them against incurring any expense which falls upon them by virtue of that engagement. In *Funk* v. *Voneida*, (11 *Serg. & Rawle* 109), it would seem that on an implied covenant of warranty against encumbrances, where the grantor had mortgaged the premises prior to the deed, if the plaintiff had set out specially the damages by reason of the encumbrances, as that he was prevented from selling the land by the existence of the mortgage, he might have recovered the full value of the mortgage. Here the damage by reason of being forced to pay the $476, is specially set out in the narr., and it is an express covenant of even greater latitude than a covenant against encumbrances, and the plaintiff has paid the money. It would seem, therefore, that there was a breach of the condition to indemnify, by reason of the claim of Cadwallader being set up and challenged, and of the payment made in consequence of it, owing to the default of the defendant in not providing against it according to the condition of the bond.

But there are two objections made to the plaintiff's recovery. The first is, that the damage happened after the death of the intestate, and the condition of the bond does not extend beyond the lifetime of Nicholas Leber : secondly, that the damage occurred

and the money was paid by the plaintiff before he was administrator.   Neither of these objections do we think valid.   It is true the condition of the bond is to keep harmless and indemnify Nicholas Leber; but the design and object of the contract, and the intent and meaning of the parties, are to be looked at.   To carry out these, the administrator must be considered as representing the person and rights of the deceased, and clothed, for the benefit of the estate, with all his rights and remedies, as to the personal estate, as fully as the intestate himself had them.   On a bond to pay a sum of money to A., if he die without receiving it, his executor may certainly recover it; and so of a covenant for his benefit, as appears by many cases.   Thus, if money be payable to B., without naming his executor, yet his executor or administrator shall have an action for it.   *Com. Dig. Administration*, B. 13.   He may have an action on a judgment, statute, recognizance, obligation, or on any contract made to the testator, (*Ibid.*), and that although the cause of action does not accrue till after the death of the party.   Thus, if A. covenants with B. to make him a lease of certain land by such a day, and B. dies before the day and before any lease made, if A. refuse to grant the lease, the executor shall have an action as such on the covenant.   *Chapman* v. *Dalton*, (*Plowd.* 286); *Went. Off. Ex'rs.* 188, 14*th* ed.   The law is the same if A. assume, upon good consideration, to deliver to B., by such a day, 20 quarters of malt, or so many loads of coal or wood, or any other wares or merchandise; and if this is not performed in the life of B., but after to his executor, it shall be to him as executor, and shall be assets in his hands, as well as the money recovered in damages for not performing should have been.   *Wentw. Off. Exors.* 188, 14*th* ed ; 11 *Vin. Ab.* 231.   So here the money to be recovered would be assets in the hands of the plaintiff, the administrator, to reimburse the money which the administrator of N. Leber was liable for to Hengst, or to Cadwallader; just as damages, if recovered by N. Leber in his lifetime, would have been.   And the intent is sufficiently manifest from the nature of the transaction.   The indemnity was on account of, and ought to be concurrent with the estate, which was in fee.   Both parties must have foreseen that death before the time when the claim should be made was neither impossible nor improbable.   The existence of N. Leber when the claim should be advanced, was no way material; whether living or dead, his estate would equally suffer damages if the defendants did not satisfy it.   The bond is given to heirs, executors and administrators, and the conveyance from Cadwallader is also stated to be to Nicholas Leber, his heirs and assigns.   It is manifest that the time when the claim might be advanced being uncertain and contingent, the bond was meant for indemnity whenever the damage contemplated should arise, otherwise the indemnity would be comparatively of little value, and incommensurate with the risk to be run.   To adopt the reasoning in *Chapman* v.

*Dalton,* (*Plowd.* 286), and to be found in many other books, in every agreement made between any parties, the intent is the chief thing to be considered; and if by the act of God, or by other means not arising from the party himself, the agreement cannot be performed according to the words, yet the party shall perform it as near to the intent of the agreement as he can. Thus, if the condition upon a mortgage is, that if the feoffor, at such a day, pay such a sum, then he and his heirs shall re-enter, his executor or heir may pay it; for the payment at the day is more the effect and substance of the matter, than the person of the feoffor. *Litt. sec.* 334; and many other like cases are there put. In the present case, if N. Leber had not conveyed the property, and on his death it had descended to his heirs, and the claim had been made, even then, I conceive, the administrator, for their relief, might have discharged it, and had recourse to this bond of indemnity for reimbursement; for, being a personal contract, not connected with the land, nor running with it, like a covenant in the deed, the heirs might not themselves have been competent to recover upon it, though the land in their hands was liable. But here N. Leber himself sold the land, and took bond for the purchase money, thereby converting the land into personalty, and making the risk of loss a personal one, to be borne by his executor or administrator on his decease; and the indemnity appropriately belongs to the administrator, who only would have the right to sue upon it.

Nor is the second objection valid, that the money was paid by the plaintiff before he took out letters of administration to N. Leber. It is true, that though an executor may perform most of the acts appertaining to his office before probate, yet the general rule is, that a party entitled to administration can do nothing as administrator before letters of administration are granted to him, inasmuch as he derives his authority, not, like an executor, from the will, but entirely from the appointment of the ordinary. But there are exceptions to this, as to all general rules. There are cases in which, for the benefit of the estate, and to support the right, the law makes letters of administration relate back to the death of the intestate, so as to render the intervening acts done by the administrator valid and binding. Thus, if a man take the goods of the intestate as executor *de son tort,* and sells them, and afterwards obtains letters of administration, it seems the sale is good. *Kenrick* v. *Burges,* (*Moore* 126); *Godolph.* 99. An administrator may have an action of trespass or trover for the goods of the intestate taken by one before the letters of administration granted to him; otherwise there would be no remedy for the wrong done. *Long* v. *Hebb,* (*Style* 341); 2 *Roll's Ab.* 399; *Anon.* (*Comberb.* 451). So, it should seem, the grant of administration will have the effect of vesting leasehold property in the administrator by relation, so as to enable him to bring actions in respect of that property for all matters affecting the same subsequent to the death of the intestate.

and so as to render him liable to account for the rents and profits of it from the death of the intestate, 8 *East* 410, in Lord El-lenborough's judgment. So, it is laid down in *Selw. N. P.* 717, that in ejectment by an administrator, the demise may be laid on a day after the intestate's death, but before administration granted; for the administration, when granted, will relate back, and show the title to have been in the administrator from the death of the intestate. And though there are many cases in which this relation will not be allowed to take place, yet, when examined, they are found to be where it is set up to devest the right of a third person legally vested between the death of the intestate and the commission of the administration, as *Gilb. Eq. Rep.* 223; *Kenrick* v. *Burges,* (*Moore* 125); or to defeat the right of the intestate or administrator, and render valid tortious acts, as *Murray* v. *E. I. Co.,* (5 *B. & Ald.* 204); *Pratt* v. *Swaine,* (8 *B. & C.* 285); *Parsons* v. *Mayesden,* (*Freem.* 152); *Mountford* v. *Gibson,* (4 *East* 446); *Stewart, adm.* v. *Edmonds,* sittings after Hilary Term 1828, *coram* Abbott, C. J., cited in the notes to 1 *Wms. Exors.* 239. The distinction, therefore, seems to be, that the relation back will be admitted for the purpose of supporting the rights of the intestate, and of ratifying acts for the benefit of his estate, and giving a remedy where otherwise there would be none; but not to affect the vested rights of third persons, or to take away those of the intestate, according to the maxim *in fictione juris semper consistit equitas.* The present case seems to fall within the former of these classes, as the relation goes to sustain the rights of the estate.

We think, therefore, the present is a case in which the letters of administration relate back, so as to make the payment by the plaintiff a payment as administrator, if he chooses to adopt and ratify it as such; and it is one of which the defendants have no right to complain, since to them it could not be material whether, when the money was paid, the plaintiff had taken out his letter of administration or not.

Judgment reversed, and a *venire facias de novo* awarded.