## CARMAN v. NOBLE.

Where a promise is made to indemnify a surety of an assignee for creditors, after the execution of the bond, there is a sufficient consideration arising from the power such surety possess under the act of Assembly to compel the assignee to give additional security, or be removed.

So where the parties making such promise have received the funds of the assigned estate: and it is immaterial, that before the promise, one of the promisors had repaid his proportion of the funds so received to the assignee.

An indemnity against debt or damage is broken by a recovery of a judgment against the party indemnified.

Such judgment on an assignee's bond will be evidence against the party indemnifying although irregular for want of a cautionary judgment, required by the act of 1836, and in the declaration the breach was laid generally, and the bond was executed after the act of 1836, pursuant to, and reciting the act of 1828, &c.

Where the verdict in such an action was for plaintiff, for damages, the court below, or in error, can enter the proper judgment for the commonwealth for the penalty, and for the party suing, for the damages assessed.

Notice to two of three joint promisors, of the commencement of a suit against which they had indemnified defendant, is notice to all, and will render a judgment recovered therein conclusive on all.

The record of proceedings against the assignee for creditors, is admissible in evidence against parties agreeing to indemnify the surety for such assignee.

Where a surety who has not paid the debt due by him for his principal, recovers

against parties who have undertaken to indemnify him, the court will take care that the money paid on such judgment shall be applied to the creditor of the surety, if application for that purpose be made to them.

In an action by a surety to recover on an agreement to indemnify him, it is immaterial to show that satisfaction could be had from the principal, where there has been a recovery against his surety.

CERTIFICATE from the Nisi Prius.

*Dec.* 12, 13. This was an action by Carman against Noble et al., on their agreement to save plaintiff harmless from debt or damage as surety for Fox, to recover the amount of a liability incurred by plaintiff as surety for said Fox, one of the defendants, who was assignee of Anguera & Curren, for their creditors.

In the first count the consideration averred was, that plaintiff would forbear applying to the court to compel Fox to give further security or be removed from office.

In the second, the consideration laid was, that the funds of the assigned estate had been deposited in the hands of the defendants, and a benefit and profit had arisen therefrom, for which defendants made the promise to indemnify plaintiff, who, relying thereon, did not secure himself as he might have done.

The third laid a promise prior to the execution of the assignee's bond.

The fourth laid the consideration to be the consent of plaintiff, that defendants might retain the moneys belonging to the assigned estate in their hands.

These counts further averred that an action on the bond had been brought to the use of the United States, and judgment recovered for $15,139.

The fifth was for money had and received. Pleas, *non assumpsit* and payment.

It appeared in evidence that the assignment was made June 23, 1837, and the bond given July 10th, plaintiff and another being sureties.

In March, 1841, the accounts of Fox, the assignee, having been referred to an auditor, there was reported as due to the United States by him, $13,271.16.

The ledger account of defendants, opened with Fox as assignee, showed a balance due him, in 1838, of $11,911.03. No later account was on the record.

On the 13th January, 1843, the three defendants signed the following instrument: "We, the undersigned, partners of the late firm of Orrick, Noble & Fox, do agree to keep William Carman

harmless *from debt* or damage in the matter of the security entered into for W. L. Fox, as assignee," &c.

In March, 1844, there was an application on behalf of the United States for an attachment against Fox, to compel payment of the amount reported in his hands. To this Fox answered, denying his ability to pay the debt, and no further action was taken.

An action was then brought on the bond against the present plaintiff, in the name of the commonwealth, to the use of the United States, which was tried, and a verdict and judgment had for $15,139.31.

Notice to Fox and Orrick, two of the defendants, of the pendency of the action on the bond, was proved, and the court directed a verdict for the plaintiff in the present case.

The exceptions to evidence were : 1. The admission of the record of the Common Pleas, which contained the assignee's bond, and the proceedings thereon. 2. The admission of the record of the action on the bond, to the use of the United States. The bond given by plaintiff as surety for Fox, recited the act of 1828, and was conditioned that Fox had and would comply, in all things, with the provisions of the act, entitled " An act to compel assignees to settle their accounts," and the supplements thereto, and faithfully execute the trust confided to him, though at the time the bond was given the act of 1836 was in force. The breach assigned was, that a large sum of money had come to the hands of Fox, as assignee, and still remained unpaid.

3. The court rejected evidence to show that after the dissolution of the firm, and before the agreement on which suit was brought, Noble had paid Fox his proportion of the money belonging to the assigned estate, which had been deposited with the firm.

4. They also rejected evidence of an express agreement by plaintiff to notify Noble when suit was brought on the bond, that he might defend. 5. Also, that Fox, the assignee, had property wherewith the claim of the United States might be satisfied.

*Fallon* and *Meredith*, for plaintiff in error.—There was no evidence to support any of the counts but the second. It is said the fact that the funds were deposited with the firm, was sufficient ; but our rejected evidence assumes Noble had paid this to Fox before the agreement to indemnify was made. And this was made under an express agreement, also conceded by the rejected evidence, that notice should be given of suit brought. In Carroll *v.* Nixon, 4 W. & S. 517, there was sufficient evidence of a previous

promise, the indemnity being given a few days after the bond; here, several years had elapsed. This was at all events for the jury.

But is it sufficient to show a mere recovery, without payment? Where the indemnity is against liability, it suffices; but where, as here, it is against debt or damage, then there must be payment: 6 Hill, 324; 11 S. & R. 109; 5 W. & S. 440; 7 Johns. 358; 4 Mass. Rep. 627; 1 W. C. C. 278.

At all events, a final judgment must be shown; here there were no such judgments as are required by the act of 1836, but a single judgment, which must be taken to be a cautionary one. The breach assigned was general, and does not show that the recovery was for the particular plaintiff: hence, any other creditor may come in and assign breaches in future.

The surety was not liable until it was shown that Fox, the principal, was insolvent: 1 W. 437; and we offered to show he was able to pay.

The bond not being according to the act of 1836, no recovery could have been had.

*Watts*, contrà.—Under the act, Carman could have secured himself by compelling additional security to be given; and this is a sufficient continuing consideration, as was expressly decided in Carroll *v.* Nixon. The evidence offered was of a payment by Noble of his apportioned share of the money received by the firm, but his joint liability was not thereby discharged.

The indemnity here was against *debt* or damage; surely a debt exists where a judgment has been recovered. In Leber *v.* Kauffelt, cited by plaintiff, an indemnity against claims was held to be broken when a legal claim was presented.

The bond was by accident taken according to the form adopted under the act of 1828, but no greater burden was imposed on the surety than is required by the act of 1836: hence, the variance is immaterial. The judgment was in accordance with the act; but if-it should have been entered for the penalty in the first instance, this court can remedy that formal defect.

There is no objection for want of notice, even were the defendant entitled to it; for notice to his joint obligor is notice to him: 1 Wend. 50.

COULTER, J.—The agreement on which the action is founded, stipulated that the defendants below would keep the plaintiff, Carman, harmless from "debt or damage, in the matter of security

that the said William Carman entered into for Wm. L. Fox, as assignee," &c.

One of the errors assigned is, that the agreement is not supported by a sufficient consideration; and it would seem the most convenient in order to notice this first, although it is not the first in the series. This objection proceeds on the ground that the agreement is gratuitous, and all on one side. In the Roman law, a contract merely gratuitous, in which the promisor was not bound to anything, was called *nudum pactum;* and the distinction was adopted in the common law of England, and thus composes a rule in our jurisprudence. The party making the promise must have obtained some advantage, or the party to whom it is made must have suffered some loss, or sustained some injury and inconvenience, in consequence of the promise. By this rule, which appears to be sound, I will test the promise in this case. In Doctor and Student, Diag. 2, ch. 24, it is observed that "these are called naked promises, because there is nothing assigned why they should be made." Here the reason for making the promise is assigned in the writing, to wit, that Carman had entered into bond as the surety of Fox. Was that sufficient? Signing the bond was, to be sure, a bygone act, but it was continuing, as a consideration; no damage or loss had yet accrued to the surety. It was to indemnify him from debt or damage that might thereafter accrue to him, that the instrument upon which the suit is brought was given. All parties looked to a future contingency, and that future liability was the consideration of the promise. And that contingency, so far as it was disastrous to Carman, he might have averted, perhaps, if he had not been lulled into security by the act of the defendants, and seduced thereby into supineness; for he might have made application, under the statute, to compel additional surety. Can it be pretended, then, that he suffered no inconvenience, and encountered no danger, in consequence of the promise of the defendants? Carman undoubtedly became the surety of Fox, originally at the request of Fox; the law will imply that much. And Fox would be legally bound to indemnify him if he suffered loss thereby. It cannot be pretended, therefore, that there was no consideration as to him. Thus it has been ruled, that if the plaintiff has become security for the promisor, or has accepted bills, or imposed upon himself any legal liability at the request of the promisor, there is a sufficient consideration to support a promise of indemnity, and render it binding in law, although no actual benefit or advantage has resulted to the promisor: Baily *v.* Croft, 4 Taunt. 611. Very slight

circumstances will, in such cases, establish a request in point of law: Law *v.* Wilkin, 6 Ad. & E. 718. A bygone act or service rendered, pursuant to a previous request of the promisor, is sufficient to sustain an action on the promise: Dyer, 272 b, n. These cases go on the ground stated in Doctor and Student, because they show a sufficient ground on which the promise was made; which is therefore not naked. In accordance with these principles, is the case of Carroll *v.* Nixon, 4 W. & S. 517, and Hinds *v.* Holdship, 2 Watts, 104; and also Greeves *v.* McAllister, 2 Binn. 591; and also the case of Lonsdale *v.* Brown, 4 Wash. C. C. Rep. 148; where it was ruled, that a promise to pay on a consideration executed, if it was induced by some previous duty, or if the debt be continuing at the time, is good to maintain assumpsit. That a duty rested upon Fox to indemnify Carman as his surety, cannot be doubted; and the other defendants, by joining with him in the contract to keep Carman harmless, made themselves jointly liable with him for a consideration moving from Fox and to him, and thus became his sureties. It may be observed as ancillary, that all the defendants were partners, and that the funds which Fox received as assignee, were placed by him in possession of the firm, instead of applying them according to law. And that, in consequence, Carman might have made application to the Court of Common Pleas, to remove the assignee, or compel him to give additional security. There was, therefore, an actual benefit accruing to the defendants, however small, and the magnitude of the benefit is of no importance. We are of opinion that the agreement was supported by a sufficient consideration.

The next in importance in the series of errors, is that which alleges that the judgment recovered against Carman on the surety-bond was not the measure of damages in this action, because Carman had suffered no loss except the payment of the attorney fee of $100.

But that is of no consequence. It was not necessary for him to wait until the judgment was recovered off him, nor until he had paid the money. He stood in jeopardy; and that judgment, with the costs, he could be compelled to pay by legal process. The condition of a bond of indemnity against all claims of A. is broken whenever the claim is made, and the obligor is compellable by law to pay. He is not bound to wait till an action is brought against him: Leber *v.* Kauffelt, 5 W. & S. 440. And more exactly in point is Stroh *v.* Kimmel, 8 W. 157; where it was ruled, that where a promise of general indemnity is made, and judgment is

recovered against the promisee, such judgment is evidence in a suit against the promisor, without proof of payment of the judgment. Closely allied to this assignment, is that which imputes error to the court for admitting the record of the judgment in evidence, because, as alleged, the judgment was void, and because it was not between the same parties nor privies. The judgment, however, was not void, but valid and subsisting, and capable of being enforced by execution. The court could regard it in no other light whatever. Even admitting that it was irregular, yet the court could not reverse or impugn it in a collateral suit. It was a judgment in fact and in law. There was not a formal or technical judgment in favour of the Commonwealth, for the amount of the bond; nor was the finding in money denominated damages.

But the old maxim, that what can be made certain, shall be considered as certain, will solve the difficulty. The bond is for $27,100 penalty; and the statute provides that the cautionary judgment for the Commonwealth shall be for the amount of the bond, and that the judgment in favour of the plaintiff, as the statute denominates the *cestui que use*, shall be for the amount of the damages he shall establish. Now, the judgment is not for the amount of the bond. But it is for the amount of debt due to the United States, with the interest. The sum named, therefore, must have been damages for the breach of the condition, in favour of the plaintiff, for whose use one of the plaintiffs, that is, the commonwealth, sued.

According to the terms of the statute, there ought, in such cases, to be two judgments—one for the amount of the penalty of the bond, which would be cautionary, and the other for the plaintiff, as the *cestui que use* is denominated in the statute, for the amount of damages he should prove.

The verdict in this case is for the plaintiffs $15,000, thus recognising two plaintiffs, which is the fact as it exists, because the statute requires two judgments. The court then ought to have moulded the judgment so as to conform to the verdict, and rendered judgment for the commonwealth for $27,100 debt, and for the plaintiff for $15,000 damages. If the defendant in the original judgment on the bond had sued out a writ of error, this court would have so modified and moulded the judgment. And why not now consider that to have been done in entering the judgment in the court below, which ought to have been done? The verdict was substantially a finding for the commonwealth for the penalty $27,100, and for the *cestui que use* for his damages. Although the verdict

be not in the words of the statute, yet if the point in controversy can be resolved out of it, the court shall work it into form and make it serve the justice of the case : Easton *v.* Worthington, 5 S. & R. 130. The English practice will illustrate the case. At the trial, the jury must find a verdict for the plaintiff with 15*s.* damages and 40*s.* costs, and also assess the damages for the breaches ; and then, on the return of the postea, judgment is entered for the debt, which is the penalty, and 1*s.* damages, the latter being merely nominal : 1 Saund. 58, n. 1. The verdict was substantial, in accordance with the requisites of the statute, and easily susceptible of being moulded according to the justice of the case. There was no error in admitting it in evidence.

The defendants were privies to that judgment, because they had promised and agreed to save Carman harmless, on account of his signing the bond on which it was founded. And Fox had notice of the proceeding, for he was sued in a separate action on the same bond, being the principal obligor, to the same term, the suits being both instituted on the same day ; and Orrick had notice, for he employed counsel to defend ; and Noble had implied notice, for the engagement to indemnify was by the firm of Orrick, Noble & Fox.

The record in the Court of Common Pleas, in the matter of Anguera & Curren, together with a copy of the bond, and the answer of William L. Fox, upon oath, which composed part of the record, were properly admitted in evidence. They were part of the *res gestæ*, and explained and elucidated the occasion of giving the bond, the appointment of Fox as trustee, and were germain and pertinent to the cause in hand.

The learned judge before whom the cause was tried, instructed the jury that their verdict ought to be for the plaintiff, but did not thereby overstep the prerogative of the court or impinge upon the rights of the jury. There was no fact disputed, or about which there was conflicting testimony. When the cause had reached that point, it presented only a sheer question of law. And from the aspect of the paper-book, I should be inclined to believe that the counsel for the plaintiff in error so considered the matter. I do not perceive how the court could have instructed otherwise than they did.

Several other errors are assigned which were not pressed, but not abandoned. The court is of opinion that they are not of weight sufficient to disturb the verdict and judgment.

The same counsel who conducted the suit for the United States, are concerned in prosecuting this suit, and it may be fairly pre-

sumed that this suit is carried on for the benefit of the United States. But if Noble or Fox have any misgiving that the money will not be so applied, upon the proper application to this court it will take care that it shall be so applied.

Judgment affirmed.