SMOCK ET AL. *v.* PIERSON, EXECUTOR.

| 68 | 405 |
|----|-----|
| 148 | 99 |

PROMISSORY NOTE.—*Consideration.*—*Partnership.*—*Good-Will.*—The interest of a retiring partner, in the good-will of the partnership business, is a sufficient consideration to support a promissory note executed by the re-

maining partners ; and the liability of the latter upon such note is not affected by the fact that such business is not thereafter successful.

From the Marion Superior Court.

*D. V. Burns,* for appellants.

*C. W. Smith* and *R. O. Hawkins,* for appellee.

NIBLACK, J.—The action in this case was by Charles C. Pierson, as executor of the last will of Ebenezer Smith, deceased, against William C. Smock and Daniei M. Ransdell, upon a promissory note, payable to the testator, for. four hundred and twenty-eight dollars and fifty-five cents.

The defendants answered that the note was given without any good or valuable consideration, to which the plaintiff replied in denial.

Trial by the court at special term; finding and judgment for the plaintiff.

By a motion for a new trial, interposed at the proper time, the defendants raised the question of the sufficiency of the evidence to sustain the finding.

Upon an appeal to the general term, the judgment at special term was affirmed.

The appellants contend that the finding of the court was contrary to the evidence, and that is the only reason urged for a reversal of the judgment below.

It was shown by the evidence that the appellants and the testator, Smith, entered into a partnership for the purchase and sale of real estate on commission, on the 30th day of April, 1873, under the firm name of Smock, Smith & Ransdell; that the firm continued in business in the city of Indianapolis until the 11th day of October, 1873, when it was dissolved by mutual consent, Smith retiring, and Smock and Ransdell, the appellants, continuing the business for a year or more afterward; that, during the existence of the firm, its place of business was known as "The Real Estate Exchange," and real estate men gathered there largely, making it a sort of "headquarters" to talk over

real estate matters; that the profits of the firm while in business amounted to about fifteen thousand and five hundred dollars, but that, after the withdrawal of Smith, the appellants did not probably make expenses.

Melville Strong, a witness introduced on behalf of the appellants, testified: "I was a partner with the deceased and Mr. Pierson, engaged in selling dental goods, during the time Mr. Smith was a member of the firm of Smock, Smith & Ransdell. I and Mr. Pierson shared in the profits realized by Mr. Smith on that business. Mr. Smith died June 16th, 1874; I was present when the note sued on was executed; heard the conversation; my impression from the conversation is, that it was given for Mr. Smith's interest in the good-will of the real estate business of Smock, Smith & Ransdell; they were engaged in buying and selling real estate on commission; Mr. Smith got his share of all the fees and commissions earned by the firm up to the time of the execution of the note; the firm was dissolved at the time the note was executed; Mr. Smith had been away for some time before on account of his ill health, and had been rendering no service to the firm; at the time he was sick with an incurable disease, and was not able to perform his duties as a member of the firm of Smock, Smith & Ransdell; his health was not sufficient to enable him to discharge the duties of an agent in buying and selling real estate; there were three notes executed at the time, aggregating one thousand dollars, for the same consideration; Mr. Pierson got one, I got one, and the third is the one sued on; the note was not given for office furniture, nor earned, or partially earned, commissions, or anything of that kind, but simply for good-will, as I understood from the conversation of the parties; I remember only that the conversation was about good-will; I do not remember what, if any thing, was said about Smith withdrawing from the firm."

The appellants, in answer to interrogatories addressed to them, stated, in substance, that the deceased was not willing to take his share of the profits simply, but that, knowing the fatal character of his sickness and his inability to perform further labor, and to humor him merely, and fearing that a refusal on their part would make him physically worse, they executed the note sued on and the two others referred to by Strong.

Several other witnesses, familiar with the real estate business, testified that the financial revulsion of September, 1873, practically destroyed all trade in real estate in Indianapolis, and that, for that and other reasons growing out of the peculiar nature of the business, the good-will claimed to have been sold by the deceased to the appellants was of no value whatever. There was evidence, however, tending to show that, at the time of the execution of the note in suit, there was a very general impression amongst dealers in real estate about Indianapolis, that there would be, within a few months at the farthest, a favorable reaction in their line of business. This, we think, affords a fair synopsis of the evidence bearing upon the consideration for which the note described in the complaint was given.

The good-will of a trade or business was tersely called by Lord ELDON "the probability that the old customers will resort to the old place." This probability results from an established business at a particular place, indicating to the public where and in what manner it is carried on. It is well settled that the "good-will" of a business, like a trade-mark, is a species of property subject to sale by the proprietor, and which may be sold by order of court. 1 Parsons Contracts, 153; *The Glen and Hall Manufacturing Co.* v. *Hall*, 61 N. Y. 226; *Buckingham* v. *Waters*, 14 Cal. 146; Abbott Law Dictionary, title "Good Will."

In estimating the value of a thing as the consideration

for a promise, there is a manifest distinction between property of a certain and determinate value, and things which have but a contingent and indeterminate value. But, in any event, mere inadequacy of consideration is not sufficient to defeat a promise. It is sufficient that the consideration shall be of some value. It may only be of slight value, or such as could be of value to the party promising. 1 Chitty Contracts, 29.

Where a party gets all the consideration he voluntarily and knowingly contracts for, he will not be allowed to say that he got no consideration. *Baker* v. *Roberts*, 14 Ind. 552.

In the case at bar, there was no pretence of fraud or concealment on the part of Smith. The appellants had every opportunity of understanding the condition of their firm's business, and in that respect Smith certainly had no advantage of them. Up to the time when Smith retired, the firm had been successful in the establishment of a good business, and in attracting the attention of persons dealing in real estate. It was quite apparent from the evidence, that the appellants desired to continue in the business thus seemingly established by the firm. It was equally apparent that, for reasons satisfactory to themselves, they wished to get Smith out of the firm, and to do so in such a way as would work no disturbance in their business, and would, at the same time, continue to them the "good-will" which the firm had enjoyed up to that time. To accomplish these objects, they agreed to give Smith and those interested with him one thousand dollars, in addition to the amount which he was entitled to receive as his share of the profits from their joint business. The promise thus made was a binding promise upon the appellants, without reference to whether the arrangement would prove to be a profitable one to them or not. For better or for worse, they got what they bargained for, and they now have no lawful reason to complain.

If their expectations as to future business were not realized, that was a misfortune for which Smith was not in any manner legally responsible. That circumstance did not even tend to show a want of consideration for the note in controversy, when it was given.

We are, therefore, of the opinion that the appellants' defence was not made out by the evidence, and that, consequently, the court below at special term did not err in its refusal to grant the appellants a new trial.

The judgment at general term is affirmed, at the costs of the appellants.

Petition for a rehearing overruled.