Wolford *v.* Powers, Administratrix.

No. 8826.

WOLFORD *v.* POWERS, ADMINISTRATRIX.

CONTRACT.—*Consideration.*—As a rule, where there is no fraud and a party receives all the consideration he contracted for, the contract will not be set aside for want or failure of consideration.

SAME.—*Right of Parties to Determine Consideration.*—Where the value of the consideration for a contract is indefinite, the parties have a right to determine it for themselves, and courts ought not to overturn their decision upon its sufficiency.

SAME.—Where one contracts for the performance of an act which will afford him pleasure, gratify his ambition, please his fancy, or express his appreciation of a service another has done him, his estimate of the value should, in the absence of fraud, be left undisturbed.

SAME.—*Promissory Note.—Consideration.*—A promissory note executed in consideration of a parent naming a child for the maker of the note, and in pursuance of a promise made him that if the child were so named he would provide generously for its education and support in life, is based upon a sufficient consideration.

SAME.—*Continuous and Executed Consideration.—Request.*—An executed consideration will not support a promise, nor will voluntary services rendered as a mere favor or gratuity constitute a valuable consideration for a promise; but where there is a request, and continuous services of value are rendered to the person making the request, the consideration is a valid one, and will support a promise to pay for such services, although some of them were rendered prior to the request.

From the Allen Circuit Court.

*W. G. Colerick, H. Colerick, R. Stratton, R. S. Taylor* and *S. L. Morris,* for appellant.

*J. Morris, L. M. Ninde* and *T. E. Ellison,* for appellee.

ELLIOTT, J.—The appellant's complaint is founded upon a promissory note executed by the appellee's intestate. The answer of the appellee alleges that the only consideration for the note sued on was the sum of $40 paid to the intestate by the appellant, and the agreement of the latter to bestow upon one of his children the name of Charles Lehman Wolford. The appellant replied to this answer that Charles Lehman, the intestate, had been an intimate friend of the appellant, and a frequent visitor at his house; that Lehman was a

widower, about eighty-seven years of age; that he had been the father of one boy who had died many years before the execution of the note; that his only relatives were three aged sisters; that such relations of friendship existed between appellant's family and the intestate that he spent a great part of his time at the former's house; that, on the 18th day of April, 1878, a male child was born to appellant; that, a few weeks after the birth of the child, Lehman requested that it should be given the name of Charles Lehman Wolford; that if that name should be given it he would make its welfare his chief object in life, "and provide for it generously, and give it a good education;" that, in consideration of such promise, the appellant did name the child Charles Lehman, which name it still bears; that it was afterwards agreed that as soon as suitable arrangements could be made, Lehman should become a member of appellant's family; that he had frequently visited appellant's house, and was on several occasions ill for a brief period while there, and was, at his request, cared for and supplied with simple remedies by appellant's wife; that, on several occasions, appellant, at Lehman's request, hired a carriage and took him out driving; that, in September, 1878, the decedent proposed to the appellant that he would, in fulfilment of his promise to provide generously for the education of his namesake and give him a start in life, and in consideration also of the services rendered to him by the appellant and his wife, execute to him his note for $10,000, stating at the same time that he preferred to give effect to his intention toward and agreement with appellant and his child in that manner, rather than by the execution of a will or the conveyance of property; that appellant, being ignorant of the law, and supposing that a promissory note would not be valid without a money consideration, stated to the decedent that he feared that a note executed in the manner proposed would not be binding; that the decedent proposed that appellant should pay him a sum of money for the express purpose of creating a legal consideration for the note, in case the other considera-

tion should be insufficient in law; that appellant assented, and thereupon paid the decedent $40; "that the note was executed in consideration of the naming of the child Charles Lehman, and of the promise theretofore made by the decedent, that if the child were so named he would provide generously for its education and give it a start in the world, and of the services rendered by the appellant and his wife, and of the sum of $40 paid by him to the decedent." The reply also states that "the personal services rendered by the appellant were of no great pecuniary value, and were rendered without any express agreement to pay for them, but that it was, nevertheless, the intention of the decedent to compensate the appellant, and to do so upon a large and generous scale, far exceeding their intrinsic value, and so as to correspond with the estimate of their value to him; and for that purpose, and upon that consideration, with the other considerations, he executed the note sued on."

To this reply a demurrer was sustained. It is the general rule that where there is no fraud, and a party gets all the consideration he contracts for, the contract will be upheld. In *Hardesty* v. *Smith*, 3 Ind. 39, it was said: "When a party gets all the consideration he honestly contracted for, he can not say that he gets no consideration, or that it has failed. If this doctrine be not correct then it is not true that parties are at liberty to make their own contracts." The same principle is declared and enforced in many of our own cases. *Kernodle* v. *Hunt*, 4 Blackf. 57; *Harvey* v. *Dakin*, 12 Ind. 481; *Baker* v. *Roberts*, 14 Ind. 552; *Taylor* v. *Huff*, 7 Ind. 680; *Louden* v. *Birt*, 4 Ind. 566; *Smock* v. *Pierson*, 68 Ind. 405 (34 Am. R. 269); *Neidefer* v. *Chastain*, 71 Ind. 363 (36 Am. R. 198); *Williamson* v. *Hitner*, 79 Ind. 233. In Pollock's Principles of Contract, the author quotes approvingly from a philosophic treatise this statement: "The value of all things contracted for is measured by the appetite of the contractors, and therefore the just value is that which they be contented to give." An examination of the decided cases will prove this to

be an unusually accurate statement of the law. In the case of *Sturlyn* v. *Albany*, 1 Cro. Eliz. 67, it was held that where the defendant promised the plaintiff that if he would show him a lease he would pay him a certain sum, and the contract was held valid. The report of the decision reads thus: "But it was adjudged for the plaintiff: for when a thing is to be done by the plaintiff, be it never so small, this is a sufficient consideration to ground an action." It is laid down in an old book that, "If A, in consideration that B will deliver to him a recognizance to read over, assumes and promises within six days to re-deliver the same to B, or to pay him £1,000; this is a good promise, upon which B may have an action against A, for the consideration is sufficient." 1 Bacon's Abridgment, 420. In *Bainbridge* v. *Firmstone*, 8 A. & E. 743, the defendant promised the plaintiff that if he would allow him, the defendant, to weigh certain boilers, he would return them within a reasonable time, and the consideration was held sufficient, Lord DENMAN saying: "The defendant had some reason for wishing to weigh the boilers; and he could do so only by obtaining permission from the plaintiff, which he did obtain by promising to return them in good condition. We need not enquire what benefit he expected to derive." In *Haigh* v. *Brooks*, 10 A. & E. 309, Lord DENMAN said, in speaking of the sufficiency of the consideration of a contract: "Both" (of the parties) "being free and able to judge for themselves, how can the defendant be justified in breaking this promise, by discovering afterwards that the thing in consideration of which he gave it did not possess that value which he supposed to belong to it? It can not be ascertained that that value was what he most regarded. He may have had other objects and motives; and of their weight he was the only judge." This case came up on appeal, and Lord ABINGER, C. B., speaking for the court, said: "The actual surrender of the possession of the paper to the defendant was a sufficient consideration, without reference to its contents." *Brooks* v. *Haigh*, 10 A. & E. 323, 334. In the argument the case of *Wilkinson*

v. *Oliveira,* 1 Bing. N C. 490, was cited, wherein it was held that the surrender of a letter would support a promise to pay £1,000.   Turning from the English to the American courts, we find many illustrations of the principle under discussion. In *Hempler* v. *Schneider,* 17 Mo. 258, the consideration for the promise was the agreement that a third person should return to St. Louis within fifty days; and it was held sufficient, the court saying: "This court is not aware of any law, which would justify it in releasing men from their lawful contracts, unless in cases of fraud, imposition, accident, or mistake in their creation.   The plaintiff may have sustained no damages in consequence of Nauman not having returned in fifty days, but there was a sufficient consideration for his undertaking, and he must abide the consequences of his own bargain deliberately entered into." In *Train* v. *Gold,* 5 Pick. 380, it is said: "So if A promises B to pay him a certain sum of money, if he will call for it at a particular time, and B calls accordingly, the promise is binding, the calling for the money being a sufficient consideration.   For any gain to the promisor or loss to the promisee, however trifling, is a sufficient consideration to support an express promise."   The Supreme Court of South Carolina said: " Every man was free to make a contract, and free to refuse it; but when once made, he was bound by it, where there was no fraud, concealment or latent defect. * * * * Inadequacy of consideration is not alone any ground for setting aside a contract solemnly entered into." *Whitefield* v. *McLeod,* 1 Am. Dec. 650.   In *Barnum* v. *Barnum,* 8 Conn. 469 (21 Am. Dec. 689), the defendant bought a lottery ticket which, at the time, was utterly worthless; and he was held liable on the note executed for it.   The court referred to the case of the *Earl of March* v. *Pigot,* 5 Burr. 2802, where two young men made a bet as to which should first come to his estate.   The notes executed by the young men ran as follows: "I promise to pay to the Earl of March 500 guineas if my father dies before Sir William Codrington."   The other read thus:  " I promise to pay to Mr. Pigot 1,600 guineas, in case

Sir William Codrington does not survive Mr. Pigot's father."
At the time the bet was made Pigot's father was dead, and yet
Lord MANSFIELD held that there was a valid consideration
for the note.

In *Earl* v. *Peck*, 64 N. Y. 596, a case similar to this in many
respects, the court says : " The only point insisted upon in
this court, relates to the consideration. The note is for $10,-
000, and expresses the consideration to be for services ren-
dered. The plaintiff had been the housekeeper for the de-
fendant, who was a bachelor, for seven or eight years, and the
latter was indebted to her for her services in some amount, and
the evidence tended to prove that at some time during the
service it was agreed that the amount of compensation should
be left to the intestate. Mere inadequacy of consideration,
except as a circumstance bearing upon the question of fraud,
or undue influence, is not a defence to a note. It is not nec-
essary that the consideration of a note shall be equal in pe-
cuniary value to the obligation incurred. If no part of the
consideration was wanting at the time, and no part of it sub-
sequently failed, although inadequate in amount, the note is
a valid obligation. * * * * * * There is no standard
whereby courts can limit the measure of value in such a case,
and an obligation is not wanting even partially in considera-
tion, because the value is less than the obligation."

The case before us, in some of its features, resembles that of
*Cowee* v. *Cornell*, 75 N. Y. 91 (31 Am. R. 428), where a note for
services was sustained although the amount was $20,000, and
greatly in excess of the value of the services. The court said :
" Mere inadequacy in value of the thing bought or paid for is
never intended by the legal expression, want or failure of con-
sideration. This only covers either total worthlessness to all
parties or subsequent destruction partial or complete." The
case of *Lindell* v. *Rokes*, 60 Mo. 249 ; S. C., 21 Am. R. 395, is a
peculiar one. There the consideration of the note sued on
was the payee's promise to abstain from the use of intoxicat-
ing liquors for eight months; and it was held to be sufficient

to support the note. In *Parks* v. *Francis's Adm'r*, 50 Vt. 626 ; S. C., 28 Am. R. 517, the consideration of the promise was the agreement of the father to name his son Nathan Francis Parks, and the court seems to have treated this as a valid consideration, although the point is not expressly decided, as the case went off upon a question whether the oral contract was within the statute of frauds. There are very many American cases illustrating the principle we are considering, and treating as valid all sorts of considerations, among them : *Crow* v. *Harmon*, 25 Mo. 417 ; *Johnson* v. *Titus*, 2 Hill, 606 ; *Oakley* v. *Boorman*, 21 Wend. 588 ; *Sawyer* v. *McLouth*, 46 Barb. 350 ; *Hurd* v. *Green*, 17 Hun, 327 ; *King's Ex'rs* v. *Hanna*, 9 B. Monroe, 369 ; *Seymour* v. *Delancey*, 6 Johns. Ch. 222 ; *Brooks* v. *Ball*, 18 Johns. 337 ; *Sanborn* v. *French*, 2 Fost. N. H. 246.

Before passing from this branch of the case, there is an English decision which we think deserves attention ; the case to which we refer is that of *Shadwell* v. *Shadwell*, 30 Law J. 145. In that case the decedent wrote the following letter to his nephew : " I am glad to hear of your intended marriage with Ellen Nicholl ; and, as I promised to assist you at starting, I am happy to tell you that I will pay to you one hundred and fifty pounds yearly during my life, and until your annual income derived from your profession of a chancery barrister shall amount to six hundred guineas, of which your own admission will be the only evidence that I shall receive or require." The declaration averred that the nephew relied upon this promise, and married the woman named in the letter. ERLE, C. J., in delivering the opinion of the court, said : "Then, do these facts shew that the promise was in consideration, either of the loss to be sustained by the plaintiff, or the benefit to be derived from the plaintiff to the uncle, at his, the uncle's, request ? My answer is in the affirmative. First, do these facts shew a loss sustained by the plaintiff at the uncle's request ? When I answer this in the affirmative, I am aware that a man's marriage with the woman of his choice is in one sense a boon, and in that sense the reverse of a loss ; yet, as between the

plaintiff and the party promising an income to support the marriage, it may be a loss.   *   *   *   *   *   Secondly, do these facts shew a benefit derived from the plaintiff to the uncle at his request? In answering again in the affirmative, I am at liberty to consider the relation in which the parties stood, and the interest in the *status* of the nephew which the uncle declares."

There are, it is commonly but not altogether accurately said, two exceptions to the general rule we have stated:

*First.* Where the sole consideration is money, and the amount is greatly disproportioned to the value of the promise.

*Second.* Where the consideration is so grossly disproportionate to the value of the promise as to indicate fraud, shock the conscience of the court, and make the enforcement of the contract unconscionable.

Of these in their order.

*First.* A money consideration is capable of exact and definite admeasurement; its value is fixed and unalterable, and there can not be any uncertainty as to its adequacy or inadequacy. The parties really exercise no judgment in passing upon its value, for that never is in doubt. Courts can, therefore, pass upon its sufficiency without infringing the rule that where the parties have for themselves determined the sufficiency of the consideration, courts will not review their decision. *Schnell* v. *Nell*, 17 Ind. 29 ; *Shepard* v. *Rhodes*, 7 R. I. 470. But where the consideration is something else than money, there must be some exercise of judgment in ascertaining and settling its value.

*Second.* Where the consideration is so grossly inadequate as to shock the conscience, courts will interfere, although there has been some exercise of judgment by the parties in fixing it. But it will be found upon an analysis of the cases, that courts interfere upon the ground of fraud, and not upon the ground of inadequacy of consideration. The courts never do interfere, unless the consideration is so grossly inadequate as to amount to fraud or oppression. Mr. Pomeroy has given the subject

careful investigation, and concludes his discussion with this remark: "Even then fraud, and not inadequacy of price, is the true and only cause for the interposition of equity and the granting of relief." 2 Pomeroy Eq. Jur., section 927. Judge Story is still more emphatic in his statement of the rule. " Mere inadequacy of price, or any other inequality in the bargain, is not, however, to be understood as constituting, per se, a ground to avoid a bargain in equity. For courts of equity, as well as courts of law, act upon the ground that every person who is not, from his peculiar condition or circumstances, under disability, is entitled to dispose of his property in such manner and upon such terms as he chooses; and whether his bargains are wise and discreet, and profitable or unprofitable, or otherwise, are considerations, not for courts of justice, but for the party himself to deliberate upon. Inadequacy of consideration is not, then, of itself, a distinct principle of relief in equity. The common law knows no such principle. The consideration, be it more or less, supports the contract. Common sense knows no such principle." 1 Story Eq. Juris., sections 244, 245. In Griffith v. Spratley, 1 Cox C. C. 383, the Chief Baron said there was no case in which mere inadequacy of price, independent of other considerations, had been held sufficient to set aside a conveyance. In Woodfolk v. Blount, 3 Haywood, 146; S. C., 9 Am. Dec. 736, the Supreme Court of Tennessee made the same declaration. The case of Harrison v. Guest, 8 H. L. C. 481, was ably argued, and it was held, Lord Chancellor CAMPBELL, and Lords BROUGHAM, WENSLEYDALE and CRANWORTH, all giving opinions, that mere inadequacy of consideration would not invalidate a contract. Lord WENSLEYDALE said: " My Lords, I entirely agree with the opinion of my noble and learned friend on the Woolsack; I concur entirely in all the observations that he has made upon this case; I do not feel the least doubt about it." The case cited was very like the present, and is strong authority upon this point.

The question in the case at bar, therefore, comes to this:

Did Wolford perpetrate a fraud upon Charles Lehman? If, upon the facts stated in the answer and reply, we can justly declare that the former was guilty of fraud, actual or constructive, then we can sustain the judgment; otherwise we must reverse it.

The character of the consideration is an important matter; for there is, as we have seen, a marked and clear distinction between a determinate money consideration and an indeterminate one. This distinction is pointed out in *Schnell* v. *Nell*, *supra*, and in *Smock* v. *Pierson*, *supra*. In this last case it was said: " In estimating the value of a thing as the consideration for a promise, there is a manifest distinction between property of a certain and determinate value, and things which have but a contingent and indeterminate value. But, in any event, mere inadequacy of consideration is not sufficient to defeat a promise." In *Kerr* v. *Lucas*, 1 Allen, 279, it was held that where the value of a consideration is indefinite, the parties have a right to fix it for themselves, and the courts can not overturn their decision upon its sufficiency. The consideration in the case before us was, except as to the $40 paid in money, an indeterminate one, and one which the parties alone were competent to measure and determine.

Where a party contracts for the performance of an act which will afford him pleasure, gratify his ambition, please his fancy, or express his appreciation of a service another has done him, his estimate of value should be left undisturbed, unless, indeed, there is evidence of fraud. There is, in such a case, absolutely no rule by which the courts can be guided, if once they depart from the value fixed by the promisor. If they attempt to fix some standard, it must necessarily be an arbitrary one, and ascertained only by mere conjecture. If, in the class of cases under mention, there is any legal consideration for a promise, it must be sufficient for the one made; for, if this be not so, then the result is that the court substitutes its own judgment for that of the promisor, and, in doing this, makes a new contract. Where the purpose of the party is to secure

a pecuniary or property benefit, there is much more ground for judicial interference than in a case like this, where the controlling purpose is not gain, but the gratification of a desire or fancy. Even in the former class of cases, courts never do interfere upon the sole ground of inadequacy of consideration, and certainly should not in the class to which the one at bar belongs. No person in the world, other than the promisor, can estimate the value of an act which arouses his gratitude, gratifies his ambition, or pleases his fancy. If there be any consideration at all, it must be allotted the value the parties have placed upon it, or a conjectural estimate, made arbitrarily and without the semblance of a guide, must be substituted by the courts.

We turn now to the cases cited by the appellee. Three of them, *Jestons* v. *Brooke*, Cowp. 793, *Floyer* v. *Edwards*, Cowp. 116, and *Baxter* v. *Wales*, 12 Mass. 365, are the same in principle, and decide that a creditor can not fix an oppressive and unconscionable sum as the measure of damages for a breach of contract. They do not proceed upon the ground of inadequacy of consideration, but upon the ground that a penalty for failure to perform a contract must not be oppressive. It may well be doubted whether they do not state the rule too broadly upon that point; for, where the damages are indefinite and uncertain, the parties may fix a certain sum as liquidated damages, and the contract will be enforced. But we need not and do not make any decision upon this point. The case of *Ex parte Young*, 6 Bissell, 53, turned upon the validity of "corner option contracts in grain," and the question as to the sufficiency of the consideration was really not discussed or decided by the court. In the case of *Cutler* v. *How*, 8 Mass. 257, there was no consideration at all for the part of the note held invalid, for the reason that no fees were due the officer. The cases of *Schnell* v. *Nell* and *Shepard* v. *Rhodes* decide that where the consideration is money and nothing else, courts may determine its adequacy; but they both declare that where the consideration is an indeterminate one, the rule is other-

wise. In *Shepard* v. *Rhodes* it was said : " In all cases, therefore, where the *assumption* or undertaking is founded upon the sale or exchange of merchandise or property, or upon *other than a money* consideration, and the promise has been deliberately made, the law looks no further than to see that the obligation rests upon *a* consideration, that is, one recognized as legal, and of *some* value." We may remark, in passing, that the doctrine, that where money is the sole consideration the courts will interfere upon the ground of inadequacy, is denied by high authority. *Lawrence* v. *McCalmont,* 2 How. 426.

We do not agree with appellee's counsel that where the consideration is partly in money and partly in something else, we must, in determining whether the consideration was adequate, exclude the money part. We suppose that if a man sells a horse for a patent hay-fork and for $40 in money, the two things must be reckoned together. But, perhaps, the general rule may not apply to a case like this, where it is made to appear that the payment of the money was little else than a mere matter of form, and that the real consideration for the promise was something other than the money. Without, however, deciding this point, we shall treat the case as resting entirely upon the two other considerations stated in the pleadings.

There are two distinct considerations stated in the reply. The first of these, the performance of services for the intestate, is, in our opinion, a legal consideration. We are not unmindful of the rule that an executed consideration will not support a promise ; on the contrary, we fully approve it, and carefully refrain from encroaching upon it. Nor do we hold, or mean to hold, that a voluntary service rendered as a mere favor or gratuity can constitute a valuable consideration for a promise. We do hold that the pleadings in this case show that the consideration was not an executed one, and that the services were not rendered voluntarily, or as a mere matter of favor. We rest our ruling upon the fact that the services

were continuous and rendered at the request of the maker of the note.   In *Osborne* v. *Rogers*, 1 Saunders, 264, an elaborate note collects the older cases upon this subject, and declares the law to be that where there is a precedent request the consideration can not be deemed an executed one.   In the appendix to Pothier on Obligations it is said, in speaking of executed considerations: " Where the act which is the consideration of the promise is founded upon a preceding request,. it is sufficient."   1 Pothier Obl. 20.   In Powell on Contracts,. 351, the rule is thus stated : "And a consideration past will be a; good ground to maintain an action upon a subsequent promise or contract, where the consideration is stated to have been at the defendant's special suit and request ; for the promise, though it follows, yet is not naked, but couples itself with the suit or request before, and the merits of the party procured by that suit or request."   Addison says:   " Bygone acts or services will sustain an action when performed or rendered pursuant to the previous request of the promisor."   1 Addison Con.. 24, sec. 11 ; *Hicks* v. *Burhans*, 10 Johns. 243 ; *Livingston* v. *Rogers*, 1 Caine, 583 ; *Lampleigh* v. *Brathwait*, Hobart, 105 ;. *Bradford* v. *Roulston*, 8 Irish C. L. 468 ; *Carson* v. *Clark*, 1 Scam. 113 (25 Am. Dec. 79).   It is quite certain that the request to perform the services, coupled with the promise to pay for them, takes the case out of the rule that no action will lie ·for services rendered voluntarily or performed gratuitously, and that the same facts take the case out of the rule declaring an executed consideration to be insufficient to support a promise.   Whatever may be thought of the reasoning of some of the earlier English cases, it can not be doubted that the conclusion that where there is a request, and continuous services of value are rendered to the person. making the request, the consideration is a valid one, and will support a promise to pay for such services, although some ˙of them were rendered prior to the request.   1 Wharton Con., sec. 515.   In the case in hand the services were rendered before and up to the time of the execution of the note, and clearly

come within the rule declaring a continuous consideration to be sufficient. 1 Chitty Con. 16; 1 Parsons Con. 468; Addison Con. 16; Powell Con., sec. 48; Comyns' Dig., title Assumpsit, B. 12; Pothier Oblig., Appendix, 19; *Loomis* v. *Newhall,* 15 Pick. 159; *Andrews* v. *Ives,* 3 Conn. 368; *Wiggins* v. *Keizer,* 6 Ind. 252; *Carroll* v. *Nixon,* 4 Watts & S. 517; *Bestor* v. *Roberts,* 58 Ala. 331.

The surrender, at the intestate's request, of the right or privilege of naming the appellant's child, was the yielding of a consideration. The right to give his child a name was one which the father possessed, and one which he could not be deprived of against his consent. If the intestate chose to bargain for the exercise of this right, he should be bound, for by his bargain he limited and restrained the father's right to bestow his own or some other name upon the child. We can perceive no solid reason for declaring that the right with which the father parted at the intestate's request was of no value. It is difficult, if not impossible, to invent even a plausible reason for affirming that such a right or privilege is absolutely worthless. The father is the natural guardian of his child, and entitled to its services during infancy, and within this natural right must fall the privilege of bestowing a name upon it. In yielding to the intestate's request, and in consideration of the promise accompanying it, the appellant certainly suffered some deprivation and surrendered some right. The rule is, that "It is sufficient, if there be any damage or detriment to the plaintiff, though no actual benefit accrue to the party undertaking." Addison Con., section 9; *Glasgow* v. *Hobbs,* 32 Ind. 440. Conceding that the intestate derived no benefit, still, as the appellant suffered some detriment and yielded a right, there is a legal consideration.

The concession that the intestate secured no benefit is one that can not be justly made, for he himself determined that the act done by the appellant, at his request, was a benefit to him. It is not necessary that the consideration for a promise should be a property one. It is true that the courts and text-

writers use the words "valuable consideration," but this is done for the purpose of distinguishing the consideration from a good one, that is, one based upon love and affection, and from one resting on a purely moral obligation. "It is a familiar doctrine," says the Supreme Court of Texas, in *Hendricks* v. *Snediker*, 30 Texas, 296, "that there need be no pecuniary benefit passing to the vendor to make a consideration valuable." In most of the cases cited in discussing the first branch of this case, the consideration was something else than one having a pecuniary or property value. Others may be added. Thus, in *Gurvin* v. *Cromartie*, 11 Iredell, 174, the consideration was the undertaking of the plaintiff to take a wife and have a child born unto him. In *Adams* v. *Honness*, 62 Barb. 326, the consideration was the removal of the promisee to a place near the home of the promisor; and this was also the consideration in *Halsa* v. *Halsa*, 8 Mo. 303, and *Rumbolds* v. *Parr*, 51 Mo. 592. In *Worrell* v. *First Presbyterian Church, etc.*, 23 N. J. Eq. 96, the consideration was the resignation of the position of pastor of a church. In Anson on Contracts, 64, cases are collected upon this general subject, and the author says that courts "will not ask whether the thing which forms the consideration does in fact benefit the promisor, or a third party, or is of any substantial value to any one. It is enough that something is promised, done, forborne, or suffered by the party to whom the promise is made, as consideration for the promise made to him." We find scattered through the books cases where devises of property are made upon conditions having no pecuniary value at all, and yet they are always enforced; and so we find men in life making subscriptions to colleges on condition that they shall bear their names, or endowing professorships upon condition that they shall be given their names, and, so far as our observation has extended, the validity of such conditions has never been challenged. It is evident that the naming of a college professorship or the like has always been considered as a matter of importance and value, for to declare otherwise

would be to affirm that courts and law-writers have for ages been solemn respecters of worthless trifles. It will not do to say that the bestowal of a name is a valueless act, and if once it be granted to be of some value, then, in the absence of fraud and oppression, it must be held to possess the value placed upon it by the contracting parties.

Cases are cited showing the importance of the question of consideration where fraud and imposition are imputed to the party asserting the contract, and to the rule declared in those cases we yield undoubting assent. But here there is no question of fraud, imposition or oppression. The case is before us upon the pleadings, and there is no charge of fraud, nor any allegation that corrupt acts were done or undue advantage taken. We are not considering the case upon the evidence, and there are no inferences to be drawn from proved facts, but we are required to do no more than examine the allegations of the pleadings, and from them determine the rights of the parties.

Few rules are better settled than that fraud is never presumed, and that a party who relies upon fraud as a cause of action, or ground of defence, must charge it in his pleadings. Where there is no such charge, and no facts constituting fraud are pleaded, courts can not by any inferential process inject that element into the case.

Judgment reversed.