BRICKELL *v.* HENDRICKS.

[83 South. 609, In Banc. No. 2958.]

EXECUTOR AND ADMINISTRATOR. *Instrument assuming debt of servant not invalid for want of consideration.*

A decedent has a perfect right to direct the disposition of his estate, and a written assumption of a debt of a servant in con-

sideration of faithful service rendered and "other valuable consideration" supported by affidavit of correctness on filing the instrument as a claim against the estate of the promisor cannot be defeated on the ground of want of consideration.

APPEAL from the chancery court of Yazoo county. HON. LAMAR EASTERLING, Chancellor.

Proceeding by Rachel Hendricks to compel H. H. Brickell, administrator, to complete payment on claim probated against the estate of J. F. Powell. From a decree for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*E. L. Brown* and *J. G. Holmes,* for appellant.·

The promise was not, by any hint of the record, in consideration of any debt due Rachel by Mr. Powell, but the plain fact is that he was moved to make it as an appreciation of "faithfulness," as a reward for merit, not due under any contract, expressed or implied.

In *Bell* v. *Oates, supra,* Judge ANDERSON stated the facts thus: "The testimony offered on behalf of the appellee tends to establish the following facts, which for the purpose of this decision are taken as true, that the decedent, Miss Moore, and her cousin, Miss Ellison, both of whom were somewhat advanced in years, lived together, Miss Ellison owning the home and the land on which they lived, and Miss Moore being possessed of some money; that five or six years before the death of Miss Moore, which took place in 1908, the appellee, Oates, an unmarriel man, lived with them, under a contract by which these ladies gave him lodging and board and from eight to twelve acres of land to work, in consideration of his looking after their affairs about the place, providing fuel for fires, calling the doctor when necessary, etc., that for a period of from twelve to fifteen months before the

death of Miss Moore she was feeble, and confined to her bed a good portion of the time, and about six weeks before her death fell and broke her limb, and from that time until her death was very ill, and died from the effects of the injury; that during the last twelve or fifteen months of her life the appellee, in addition to the services he had theretofore performed, waited on her in her sickness and did what was necessary for her comfort; that about six months before her death, Miss Moore stated, while appellee was performing a necessary service for her on account of her sickness: 'I am sorry Oliver (referring to appellee) has this to do, and he is a young man, but we can't do any better. We can't get another living soul, and I will see that he is paid.'

On behalf of the estate it was shown by the witness Shilling, whose testimony is undisputed, that he had attended to the business affairs of Misses Moore and Ellison for many years before the death of the former; that, acting for them, he hired the appellee, in consideration of his lodging and board, and land to work, to be furnished him by them, "to stay there and take care of them, and in case of sickness they would have him to go after the doctor, and see after everything about the place, and wait on them."

The facts, stated by the record in this case, are in every substantial detail as in this, as to the nature of the service, and the nature of the contract, and the court said: "Where a contract is shown, as in this case, by the terms of which the services to be rendered, and the compensation therefor, are fixed, and the claim is for additional compensation for services not contemplated by the contract, loose declarations of the decedent to a third person, expressing a willingness to pay the claimant for services then being rendered by him, are insufficient to establish, either that such services were not contemplated by the contract, or an

agreement to pay extra therefor. Appellee, under the contract was bound to render the very service he is making claim for; and, had it been shown that decedent expressly agreed to pay therefor an amount additional to that provided in the contract, such agreement would not be binding on her estate, because without consideration. Reversed and decree here for appellant.''

Appellee, under her contract, was bound to render the very service rendered, for Alice says that soon after she went there, she was given a raise in salary; and, ''had it been shown (or it being shown) that the decedent expressly agreed to pay therefor an amount additional to that provided in the contract, such agreement would not have been binding on her estate, because without consideration.''

. It is respectfully submitted that the decree should be reversed, and decree here entered dismissing the bill. Respectfully submitted.

*Barnett & Perrin,* for appellee.

The case was tried and decided on the record which appears in this court. Nothing has been added to or subtracted from it and we submit that upon this record the case should be affirmed for two main reasons.

First: That it appears from said record that the instrument was based upon a good and valuable consideration.

Second: That the chancellor found that it was based upon a good and valuable consideration, and there is evidence to sustain this finding, and this court, under such circumstances will not reverse.

First: On its face the instrument is a perfectly legal one. ''Faithful service rendered me for a long term of years'' in and of itself, is not only a good, but a valuable and legal consideration, to say nothing

of the ''other valuable consideration recited in the instrument.''

The maker of this instrument being dead its execution not called in question, and the mouth of the beneficiary thereof being closed, we submit that its mere introduction as evidence made a *prima-facie* case. It is admitted, in fact the instrument itself recites, that appellee had been in the service of the testator for long term of years, and there is absolutely no proof to show that for such service she had ever been paid one cent, either by the testator or the administrator, except the sum of fifteen dollars, and which was specifically paid for the month of September, 1909 and after the date of said instrument. If such is the case, and it was peculiarly in the power of the administrator to show what payment, if any, had been made the complainant for services rendered in the lifetime of the testator, there can be no doubt but that the instrument was based on a good and valuable consideration. This, it seems to us, is an end of the controversy in this matter, and the ingenious, though rather technical argument of counsel for the appellant, that it was a mere gratuity, is based upon an assumption without any evidence to support it. If appellant had shown that complainant had been compensated for all past services, there might have been some ground for assuming that this instrument was gratuitously executed, but no such evidence appears anywhere in the record.

If presumptions are to prevail in the decision of this case, we submit that they are all in favor of the appellee. In the first place it is a legal presumption that the instrument, solemnly made by the testator in his lifetime, is legal rather than illegal; that, the testator would not knowingly impose upon his faithful servant, by executing and delivering to her an illegal instrument—one based, if you please, as counsel contend, upon no consideration, and therefore illegal. This

instrument certainly was executed for some purpose, and being in plain and unambiguous language, it is not unreasonabble to presume that it means what it says, viz; that it was "in consideration of faithful service rendered;" not services for which his servant had already been compensated, but services for which the maker of the instrument still  owed.

In this respect, the case is readily distinguished from that of *Bell* v. *Oates,* 53 So. 491, relied on entirely by counsel for appellant. In that case the contract for service was made by some one other than the intestate, who testified that it was specified and to cover all services rendered, in the present case the testimony as to the terms of the contract of service is very general and vague, but Mr. Powell made his own contract with the appellee, and is presumed to know what it covered, and whether he had paid for the same; and knowing these facts, he executes this instrument, assuming and undertaking to pay the indebtedness owing by his servant, thus putting a construction upon the contract of service, entirely contrary to that contended for by his administrator, who doesn't pretend to know anything about it.

The decision in the *Bell* v. *Oates,* case was, first, that the complainant had not established by sufficient evidence, that the intestate had made the contract sued on; and second, even if he could establish the promise of the intestate to remunerate him for the services claimed, that, under the undisputed contract made with Schilling, such services were covered. Only Powell and the appellee knew the terms of the contract between them. Powell's mouth is closed by death, appellee's by the law; but before his death, Powell solemnly admits in writing by the instrument here called in question, that he is indebted to appellee for such services. The lower court so finds, and in so doing we think it was eminently correct.

As bearing directly upon the question here involved we call the court's attention to the following cases: *Berthe* v. *Succession of Lacroix,* 29 Am. Rep. 330; *Wolford* v. *Powers,* 44 Am. Rep. 26. The case of *Wolford* v. *Powers,* is a very full discussion of the whole question of consideration and from it we quote as follows: "Where a party contracts for the performance of an act which will afford him pleasure, gratify his ambition, please his fancy, or express his appreciation of a service another has done him, his estimate of value should be left undisturbed unless indeed there is evidence of fraud."

"No person in the world, other than the promisor, can estimate the value of an act which arouses his gratitude, gratifies his ambition, or pleases his fancy." *Wolford* v. *Powers,* 44 Am. Rep. 24.

Second: Outside of the instrument itself, which we have contended above shows on its face a valuable consideration, with no testimony to disparage it, we submit that there is evidence in the record upon which the chancellor could find that the said instrument was based upon a valuable consideration, and this being true, the court will not reverse.

Aside from this it is a rule that where one incurs liability, even on the verbal promise of another to assist in the payment of the same, that such promise is based upon a valuable consideration. *Scott* v. *Osburn,* 2 Muf. Va. 413; *Berry* v. *Grady,* 1 Metc. Ky. 383; *Meachum* v. *McKie,* 1 Hil. So. Ca. 374.

On the whole we submit that this is a just liability against the estate of J. F. Powell, and that the decree of the chancery court should be affirmed.

*Campbell & Campbell, Robt B. Mayes* and *Clayton D. Potter,* for appellee.

We contend that if there ever was a contract based upon a valuable consideration, the instrument litigated

in this case presents one. The consideration for this agreement was of the very highest character. It was more valuable than money because it consisted in ministering to an old man, in the last days of his life, when there seemed to be no one left but this servant to do it. Services which she performed for him could not be paid for in money for it is too valuable; more valuable than money itself. It was manifestly the intention of the deceased to compensate this servant for her faithful service, and we contend that the greed of those of his heirs who undertake to resist the payment of this debt, should not be allowed to thwart the intention of the owner of this property in carrying out an obligation which he was bound to discharge by every legal and moral consideration.

There is no merit in the consideration of the appellants and they should not be allowed to take away from this faithful servant her just reward for faithful attentions for more than twenty years and at a time when those who would now take the money would not, or did not, volunteer to come forward and relieve the sufferings of this invalided old man in his last years.

The only case that counsel for appellant rely upon is the case of *Bell* v. *Oates*, 97 Miss. 790, now the Oates case and the case on trial are vastly different as we will undertake to show; the opening sentence in counsel's brief shows that these two cases are not at all alike, counsel says in the beginning of his brief that the sole question in this instant case is "whether or not there is a consideration to uphold the promise probated and sued upon."

In the instance case the promise is admitted, and counsel says without consideration; in the Oates case it is shown that Oates lay quiet for years and then undertook to probate a claim against Miss Moore's estate for three years back.

Before the probation of this claim there had never been any hint that any such claim was thought of by Oates, or recognized or dreamed of by Miss Moore. In addition to this, there was testimony in the Oates case positive and unequivocal, refuting the claim of Oates. On behalf of the estate, one Shilling, in the Oates case positively testified as follows, see 97 Miss. 792, viz, "On behalf of the estate it was shown by the witness, Shilling, whose testimony is undisputed, that he had attended to the business affairs of Misses Moore and Ellison for many years before the death of the former; that acting for them he hired Oates in consideration of his lodging and board and land to work to be furnished by them, to stay there and take care of them, and in case of sickness they would have him go after the doctor, and see after everything about the place, and wait on them."

Now the record in the Oates case shows that there was evidence showing that Oates was paid for the very service that he attempted to claim compensation for in the probated claim. There is no such evidence in this case.

In the Oates case the contract for the compensation was disputed, and was propounded under suspicious circumstances indicating fraud. In the instant case the party to be bound says in writing: "In consideration of faithful services rendered me for a long period of years, etc." The party making this statement best knew about this. Now the only ground it is sought to defeat this contract on is that no consideration supports it. Who best knew about this?

Not a witness testifies that the faithful services were not rendered, and the record shows very conclusively that the most valuable kind of service was rendered. There is no testimony in this case to show that this appellee was bound to render the very service that the decedent to pay her for, but if there was, he had a

right to make this contract in order to keep her in this service, and to induce greater exertion. The instant case and the Oates case are not at all similar.

If the court needs any further authority on this subject we call attention to the following: *Barthe* v. *Succession of Lacroix,* 29 American Reports, page 330. This is a Louisiana case and is reported in Volume 29 La. Ann. 326.

On page 332 of American Reports, Volume 29, the supreme court of Louisiana says: "We have read all the evidence in this case carefully and the conclusion we have reached is that the deceased Lacroix being without family and believing that plaintiff had served him long and faithfully at very small wages, felt that he was under a moral obligation to remunerate him beyond his wages and executed this five hundred dollar note for that purpose."

This was a case where Lacroix executed a note to Barthe, a clerk in his employ of long standing, for five hundred dollars payable at the death of Lacroix. There was testimony of several witnesses and the court reached the above conclusion that the note was given because Lacroix thought he had paid Barthe very small wages and that he was under moral obligation to remunerate him beyond his wages and executed the five hundred dollar note for that purpose. The court says: "We think that there was a good and valuable consideration for the note." This case, we think, fully answers the argument of appellant that there is no consideration for the obligation of Powell, and we ask the court's careful perusal of same.

We also cite the court to the following authority: *Wolford* v. *Powers,* 85 Ind. 294, also 44 American Reports, page 16.

We earnestly insist that every legal and moral consideration weighs for an affirmance of this case.

COOK, J., delivered the opinion of the court.

The appellee probated the following instrument as a claim against the estate of J. F. Powell, deceased, viz:

"In consideration of faithful service rendered me for a long term of years by my servant, Rachel Hendricks, and other valuable consideration, I, J. F. Powell, do hereby agree and assume to pay the notes of said Rachel Hendricks to Mrs. Mary R. Miles, secured by a deed of trust on the property of said Rachel Hendricks; the first of said notes being for three hundred fifty-seven dollars, and due and payable March 8, 1910; the second of said notes being for two hundred ninety-seven, due and payable March 8, 1911.

"Witness my hand this 25th day of August, 1909.

                                        J. F. POWELL.

"State of Mississippi, Yazoo County:

"Personally appeared before me, S. S. Griffin, clerk of the chancery court of said county, Rachel Hendricks, who made oath that the annexed claim is just, correct, and owing from the deceased, J. F. Powell, that it is not usurious, and that neither that the affiant nor any other person has received payment in whole or in part thereof, except $——— credited thereon, and that security has not been received therefor, except ———.

                                  RACHEL HENDRICKS.

"Sworn to and subscribed before me this 29th day of Oct., A. D. 1909.

                          "S. S. GRIFFIN, Clerk,

"[Seal.]                    . By LEE GIBBS, D. C.

"Probated and allowed for six hundred fifty-four dollars and registered, this 29th day of Oct., A. D. 1909.

"Register of Claims, Book A, page 594.

                          "S. S. GRIFFIN, Clerk,

                              "By LEE GIBBS, D. C."

The record discloses that the original executor made several payments on this claim, but after his resignation, his successor declined to pay the balance due and proceedings were begun in the chancery court of Yazoo county to enforce the payment of the balance due. A decree was entered granting the relief sought and the administrator appeals.

The case of *Bell v. Oates*, 97 Miss. 790, 53 So. 491 is relied on for a reversal of the decree of the chancellor. As we view the evidence in this case, an entirely different case was made from the case referred to, *Bell v. Oates, supra.* The opinion in that case thus sums up the case under review:

"Where a contract is shown, as in this case, by the terms of which the services to be rendered, and the compensation therefor, are fixed, and the claim is for additional compensation for services not contemplated by the contract, loose declarations of the decedent to a third person, expressing a willingness to pay the claimant for services then being rendered by him, are insufficient to establish, either that such services were not contemplated by the contract, or an agreement to pay extra therefor. Appellee, under the contract, was bound to render the very services he is making claim for; and, had it been shown that decedent expressly agreed to pay therefor an amount additional to that provided in the contract, such agreement would not be binding on her estate, because without consideration."

Here we have a written obligation, which is unambiguous, and not only expresses appreciation of the past services of appellant already rendered, but also acknowledges the receipt of other valuable considerations. The deceased had a perfect right to direct the disposition of his estate, and we think the disallowance of this claim would defeat the purposes of the testator.

We quote with approval from the case of *Wolford* v. *Powers,* reported in 85 Ind., 303, 44 Am. St. Rep. 24:

"Where a party contracts for the performance of an act which will afford him pleasure, gratify his ambition, please his fancy, or express his appreciation of a service another has done him, his estimate of value should be left undisturbed, unless, indeed, there is evidence of fraud. There is, in such a case, absolutely no rule by which the courts can be guided, if once they depart from the value fixed by the promisor. If they attempt to fix some standard, it must necessarily be an arbitrary one, and ascertained only by mere conjecture. If, in the class of cases under mention, there is any legal consideration for a promise, it must be sufficient for the one made; for, if this be not so, then the result is that the court substitutes its own judgment for that of the promisor, and in doing this makes a new contract.

"Where the purpose of the party is to secure a pecuniary or property benefit, there is much more ground for judicial interference than in a case like this, where the controlling purpose is not gain, but the gratification of desire or fancy. Even in the former class of cases, courts never do interfere upon the sole ground of inadequacy of consideration, and certainly should not in the class to which the one at bar belongs. No person in the world, other than the promisor, can estimate the value of an act which arouses his gratitude, gratifies his ambition, or pleases his fancy. If there be any consideration at all, it must be allotted the value the parties have placed upon it, or a conjectural estimate, made arbitrarily and without the semblance of a guide, must be substituted by the courts."

*Affirmed.*